Willie R. SMITH, Plaintiff-Appellee,

v.

Everett E. PRICE, Chief of Police, Athens, Georgia, and City of Athens Personnel Board, City of Athens, Georgia, Defendants-Appellants.

No. 78–1007.

United States Court of Appeals, Fifth Circuit.

May 16, 1980.

Denny C. Galis, Athens, Ga., for defendants-appellants.

James W. Smith, Athens, Ga., for plaintiff-appellee.

Before BROWN, HILL and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

Willie R. Smith, a former Athens, Georgia police officer, was dismissed by the Chief of the Athens Police Department, Everett E. Price, for violation of rules and regulations [1] applicable to Athens police of-

---

**1.** Two sets of rules and regulations are relevant to this litigation. First, employees of the City of Athens are subject to Merit System ·Rules and Regulations which provide grounds for dismissal. Second, Athens police officers are also subject to eighteen pages of rules and regulations last promulgated September 3, 1976, which contain numerous grounds for dismissal.

The relevant portions of the Merit System Rules provide as follows:

Section VIII—Separation and Disciplinary Action

  A. *Separations*

    1. *Types of Separation*

      .    .    .    .    .

    (f) *Dismissal*—An employee covered under the provisions of this plan may be dismissed for cause when alternative personnel actions (reprimand, suspension, demotion, etc.) would not be deemed sufficient, appropriate or in the best interest of the City service. Any one of the following reasons may be deemed sufficient cause for dismissal, though dismissal may be for causes other than those enumerated, where retention of such employee would be detrimental to the interest of the City:

1. Failure to meet prescribed standards of work, morality, and ethics, to an extent that makes an employee unsuitable for any kind of employment in the City's service.

    .    .    .    .    .

6. Intoxication on duty from intoxicating liquor, malt beverage, wine, or other similar beverage, or drug abuse, or drunkenness, or other immoral conduct incompatible with the service of the City.

    .    .    .    .    .

9. Failure to comply with published rules, regulations, or ordinances of the City or any department thereof.

The relevant portions of the *Police Department Regulations* provide as follows:

DEPARTMENTAL GENERAL ORDER 76–4
ATHENS POLICE DEPARTMENT
ISSUED:
        3 September 1976

    .    .    .    .    .

ficers. After unsuccessfully appealing to the City of Athens Personnel Board, Smith filed a lawsuit under 42 U.S.C. § 1983 alleging that his dismissal deprived him of rights guaranteed by the first, fifth, and fourteenth amendments to the Constitution, and that the rules and regulations pursuant to which he was discharged were unconstitutionally vague and overbroad on their face. The district court agreed and ordered reinstatement, back pay, injunctive relief and attorney's fees. *Smith v. Price,* 446 F.Supp. 828 (M.D.Ga.1977).

The relevant facts as set out in the district court's opinion are as follows:

Officer Smith on February 8, 1976, was married and living in the adjoining county of Oconee. On that date while off duty and out of uniform, he visited the woman with whom he was having an extra-marital affair, in her apartment in Athens and while there was shot by the woman's former lover. Following an investigation he was suspended for ten (10) days by Chief Price who stated as a reason for that action:

"You are hereby suspended for a period of 10 working days for the violation of the Departmental Rules and Regulations, Section 101.48. A copy of the Internal Affairs Investigation Report is attached for your information. As per to our discussion of this date *any further violation of the departmental rules and regulations will lead to dismissal.*" Plaintiff's Exhibit "1" at 12. (Emphasis supplied).

Section 101.48 of the regulations concerned conduct unbecoming an officer.

On June 8, 1977, Chief of Police Price received a telephone call from the woman with whom plaintiff Smith was having an affair in February 1976. She advised that the affair had continued and told of many personal difficulties between her, Officer Smith and Officer Smith's wife.

### RULES AND REGULATIONS

The purpose of this General Order is to establish and maintain definite Rules, Regulations, and Responsibilities applicable to all members of the City of Athens Police Department. The material below is NOT ALL INCLUSIVE, since every appropriate action or every possible violation a member may make is impossible to include within one Manual. Any violation(s) not specifically enumerated in this Manual or other Departmental directives which warrants disciplinary action shall be documented and classified as "Conduct Unbecoming An Officer/Member" and the appropriate disciplinary action shall be pursued by the Department.

I. RULES GOVERNING ORDERS AND COMMANDS

A. Members *SHALL* recognize and adhere to all General Orders, Memorandums, Special Circulars, and any other Order(s) printed upon authorized Departmental Stationery and signed by the Chief of Police or the Chief's designated Command Officer(s). All of the above shall have the complete force and effect of a Departmental General Order.

4. Failure to obey or deliberate refusal to obey a lawful order(s) or command(s) issued by a Command or Supervisory Officer(s) is *INSUBORDINATION* and the violating member will be subject to dismissal.

II. PROFESSIONAL CONDUCT OF DEPARTMENTAL MEMBERS

A. Members *SHALL* conduct their professional, public, and private lives and activities in such a manner as to prohibit conveying an image of *DISREPUTE* on the Department or the individual member(s).

1. Members shall always conduct themselves in a professional, responsible, and accountable manner.

2. Members shall maintain a loyalty to the Department consistent with all laws and Departmental Rules. A sincere loyalty to the Department is an important element in developing and maintaining Departmental morale and discipline.

E. Members are *PROHIBITED* from engaging in the following activities during a tour of duty unless the below stated exceptions are applicable.

6. Loitering in any public or private business or other location except to accomplish a specific police function. This rule applies to members when they are in uniform whether on or off a tour of duty.

III. RESPONSIBILITIES OF MEMBERS

F. Members are responsible for utilizing Departmental equipment only for the intended purpose of the particular equipment and within established Departmental Procedures. Additionally, members shall make every effort to conserve the resources of the Department and shall not willfully or negligently damage City of Athens property or equipment.

Until the receipt of this telephone call the defendant police chief and city officials were unaware of plaintiff Smith's post-February 1976 extra-marital conduct. As his personnel file and the evidence show, he was then considered to be generally satisfactory and in some respects an outstanding police officer.

Chief Price directed Major Wallace to investigate the situation. He did, and based upon what the plaintiff, his wife and his girlfriend freely and voluntarily said, Major Wallace reported:

"TO: Everett E. Price, Chief of Police

"FROM: Mark Wallace, Uniform Division Commander

"SUBJECT: Internal Investigation; Officer Willie R. Smith

"OFFENSE: Failure to adhere to and abide by:

1. Departmental General Order 76–4—Rules and Regulations: Section I.A and I.Af—Rules Governing Orders and Commands:

2. Section II.A, II.A1 and II.A2—Professional Conduct of Departmental Members;

3. Section II.E—Professional Conduct of Departmental Members (Members are Prohibited);

4. Section III.F—Responsibilities of Members;

5. General Order 76–4—Conduct Unbecoming an Officer;

6. City of Athens Merit System: Section VIII A 1.f.(1), (6), and (9).

"DATE: June 8, 1977

BASIS FOR INVESTIGATION:
On June 8, 2977 (sic), Miss _____* contacted Chief Price telephonically and alleged misconduct on Willie Smith's part directed toward her, to include physical assualt (sic) and forceful threats.
* Name omitted.

SYNOPSIS:
Investigation disclosed that Officer Willie Smith has had an affair with Miss _____ for a period of more than three (3) years. During this time Officer Smith was shot three (3) times in Miss _____ apartment on February 8, 1976 by a boyfriend of Miss _____. As a result of that incident Officer Smith was suspended for a ten (10) day period and advised in writing that other such misconduct would result in his dismissal.

Since the above incident, Officer Smith has repeatedly visited Miss _____ in her residence while he was on a duty tour, not concerned with official Police business and without reporting his location to the dispatcher or shift command, all in violation of Departmental General Orders. During these visits Miss _____ alleges Officer Smith has physically assaulted, verbally threatened, and on several occasions drawn his departmental issued service revolver on her to enforce his threats. The last such incident being less than two weeks prior to this date.

Miss _____ visited Officer Smith's residence in Oconee County on June 7, 1977 and removed his departmental issued gun belt and service revolver from his private vehicle. Miss _____ fired Officer Smith's service revolver six times, three rounds of which struck Officer Smith's private vehicle and upon leaving the premises Miss _____ took the departmental issued gun belt and revolver with her. Officer Smith failed to report the above in violation of Departmental General Orders.

CONCLUSIONS:
That officer Willie R. Smith has maintained an affair with Miss _____ for a period of approximately three years. That Officer Smith renewed this affair approximately one month after he was shot in her apartment in violation of Departmental Rules & Regulations I. A. and I. A. 4.—Rules Governing Orders and Commands.

That Officer Smith has visited Miss _____ at her residence in an on duty status, not on official business, on sev-

eral occasions without advising the dispatcher or shift supervisors of his whereabouts in violation of Departmental Rules & Regulations II. E. 6.— Responsibilities of Members (members are prohibited).

That Officer Smith failed to report Miss _____ taking his gun and gunbelt from his privately owned vehicle in violation of Departmental Rules & Regulations III. F.—Responsibility of Members.

That Officer Smith stated before the Promotion Review Committee that he was not 'running around' on his wife in violation of Departmental Rules & Regulations II. A., II. A. 1. and II. A. 2. That Officer Smith's involvement with Miss _____ is in violation of general order 76–4 Rules & Regulations—Conduct Unbecoming an Officer and City of Athens Merit System Section VIII. A. 1. f.(1), (6), (9)." Plaintiff's Exhibit 6.

446 F.Supp. at 829–31.

Based on the Wallace memorandum and the trial testimony, the district court found that:

the sole cause of Officer Smith's dismissal was his continuing to have an extra-marital affair after being commanded by Chief Price to refrain from doing so. The other conclusions were inserted by Major Wallace and adopted by Chief Price only to buttress this principal conclusion; in and of themselves they would not have been cause for dismissal. Neither Chief Price nor the Personnel Board would have decided to dismiss him for those reasons had he not continued to run around on his wife.

446 F.Supp. at 833. The district court further found that Officer Smith's affair was protected activity under the first amendment guarantee of freedom of association and the constitutional right to privacy, citing, *inter alia, NAACP v. Alabama,* 357

U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) and *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). The district court held that because the City failed to meet its burden of showing that Smith's protected conduct substantially and materially impaired his usefulness as a police officer, his dismissal constituted a deprivation of his constitutional rights. Turning to the issue of the facial constitutionality of the rules and regulations, the district court determined that the regulations were unconstitutionally vague and overbroad in their entirety. The district court awarded Officer Smith reinstatement, back pay, allowances and attorney's fees, and, in addition, permanently enjoined the Police Chief and the Personnel Board from utilizing the City Merit Rules and the Police Department Regulations to regulate the conduct of anyone. We reverse.

Upon careful examination of the trial record and the district court's opinion, it is clear to us that the district court viewed this case as one primarily concerned with a government employee's right to freedom of association within a zone of privacy. We have determined, however, that the question whether an adulterous relationship is protected activity under the Constitution need not be reached. Assuming without deciding that the extramarital affair in which Smith engaged is protected by the first amendment right to freedom of association or the constitutional right to privacy,[2] we hold that Officer Smith's dismissal was not constitutionally improper.

The Wallace memorandum and the trial testimony establish that the City alleged five reasons for Officer Smith's discharge:

(1) Smith's continuation of the affair after Chief Price's order not to do so, in violation of the rules requiring adherence to lawful orders;

(2) Smith's visits to the woman's home while on duty without notifying the police dispatcher, in violation of the rule against loitering while in uniform;

---

**2.** With respect to the district court's holding that Smith's conduct was constitutionally protected, we note that adultery is a misdemeanor criminal offense under Georgia law. Ga.Code Ann. § 26–2009 (1978).

(3) Smith's failure to report the taking of his police gun and gunbelt, in violation of the rule governing proper care of departmental equipment;

(4) Smith's false statement before the Promotion Review Board that he was not "running around" on his wife, in violation of rules requiring loyalty and accountability, and prohibiting conduct which would bring the department into disrepute; and

(5) Smith's total involvement with the woman, in violation of rules prohibiting conduct unbecoming an officer, immoral and unethical conduct, and failure to comply with rules and regulations of the City.

Smith asserts that he has a constitutionally protected right to engage in a relationship involving extramarital sexual activity. Thus, he argues that the City could not constitutionally discharge him for asserted reasons 1, 4 and 5—his involvement in the affair, his continuation of the affair after being ordered not to do so, and his false statement concerning the affair. Smith does not seriously contend, however, that a police officer has a constitutionally protected right to engage in otherwise prohibited conduct simply because he is engaged in an extramarital affair. Thus, he makes no colorable claim that the city is constitutionally prohibited from discharging him for asserted reasons 2 and 3, and an aspect of asserted reason five[3]—his visits to a private residence without notifying the police dispatcher, his failure to report the theft of his police gun and gunbelt, and his involvement with guns and gunplay. Rather, Smith contends and the district court ruled that the true basis for the firing was the

fact that he was engaged in an extramarital affair, and that the constitutionally permissible reasons for the firing advanced by the City would not have led to his dismissal in the absence of the affair.

The proper legal framework for resolution of the question whether termination of employment was "caused" by a plaintiff's participation in protected activity was established by the Supreme Court in *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Under *Mt. Healthy,* when a dispute arises concerning whether a discharge was effected pursuant to a permissible or an impermissible reason, the plaintiff has the burden to show (1) that his conduct was constitutionally protected, and (2) that this conduct was a "substantial" or "motivating" factor in the termination decision. *Id.* at 287, 97 S.Ct. at 576. If that burden is met, the burden of persuasion shifts to the defendant to prove by a preponderance of the evidence that it would have reached the same decision without regard to the protected conduct. In this case, the district court, applying *Mt. Healthy,* found that the sole reason for the discharge was the continuation of the affair, and that Officer Smith would not have been fired for the other reasons asserted by the City in the absence of the protected activity.

Though we agree with the district court that the nature of the extramarital relationship was a "substantial" or "motivating" factor in the decision to fire Smith, and we assume for purposes of this discussion that the relationship itself was constitutionally protected, we reject as clearly

---

**3.** The fifth asserted reason for the firing was Smith's "total involvement" with the woman. An aspect of Smith's involvement with the woman, which was discussed in the Wallace memorandum, was the gunplay which led to physical injury in the first instance and property damage in the second. Though Smith seems, on the surface, to claim that involvement in gunplay is entitled to constitutional protection because his entire relationship with the woman is constitutionally protected, it is important to note that Smith does not—and could not reasonably—advance the thesis that

all police officers—whether they are engaged in extramarital affairs or not—are immune from disciplinary action based on involvement in gunplay. Thus, we deem it proper to make a distinction between the affair and the gunplay, categorizing, *arguendo,* the affair as a constitutionally impermissible reason for discharge and the gunplay as a constitutionally permissible reason for the discharge. The same distinction applies to Smith's on-duty visits to the woman's house and his failure to report the theft of his gun.

erroneous[4] the district court's finding that Officer Smith would not have been fired without regard to the protected activity because, although there is evidence to support it, after reviewing all the evidence we are "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

In evaluating the sufficiency of the permissible reasons asserted for the firing under *Mt. Healthy*, we begin with recognition of the fact that record testimony established that each of the three permissible reasons were significant, dismissible offenses under the City Merit System Rules and the Police Department Regulations. Section VIII A 1(f)(9) of the City Merit System Rules provides that "[f]ailure to comply with published rules, regulations, or ordinances of the City or any department thereof" justifies dismissal "when alternative personnel actions . . . would not be deemed sufficient, appropriate or in the best interest of the City Service." Each of the three behaviors which were the basis for the permissible reasons asserted for the firing were prohibited by a published rule or regulation of the Police Department, and were thus dismissible offenses.[5] It is important to note that each offense with which Smith was charged was significant in and of itself. Police officers in Georgia are charged with preservation of public order, the protection of life and property, and the prevention, detection, or investigation of

crime. Ga.Code Ann. §§ 78–901, 92A–2102(d) (Supp.1979). It is hardly surprising that Chief Price considered Smith's involvement in two separate "not-in-the-line-of-duty" incidents resulting in breaches of the peace to be incompatible with the duties and responsibilities of a police officer under Georgia law and worthy of sanction as conduct unbecoming an officer.[6] Smith's failure to report the theft of his gun and gunbelt was likewise a significant offense, for the theft posed the very real danger that persons or property might be further damaged by the gun, particularly since it was in the hands of a woman who had recklessly discharged it once already. Finally, Smith's on-duty visits to the woman's house without notifying the dispatcher, especially when viewed as a continuing course of conduct, amounted to a major breach of the rules, for by failing to notify the dispatcher of his location, thereby rendering himself unreachable by radio, Officer Smith placed himself, the public and fellow police officers in a position of potential peril. Thus, both the serious nature of Smith's offenses and the fact that each offense was punishable by dismissal was clearly established at trial.

The next critical indicator that Officer Smith would have been fired without regard to his participation in what we assume for purposes of analysis to be protected activity is contained in the testimony of Major Wallace and Wilbur Jones, Chairman of the Personnel Board. Though he admit-

---

4. This circuit has held that the question whether an employer would have reached the same decision without regard to the protected activity is one of fact and that the district court's finding on the issue is to be reviewed under the "clearly erroneous" standard. *Ayers v. Western Line Consol. Sch. Dist.*, 555 F.2d 1309, 1315 (5th Cir. 1977), *rev'd on other grounds sub nom., Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979).

5. See Note 1 *supra*. The alleged vagueness and overbreadth of the rules under which Smith was dismissed is a separate issue which we address below. Our point here is simply that, under the rules and regulations, each behavior which formed the basis of an asserted permissi-

ble reason for the firing was a dismissible offense.

6. This is especially true because testimony established that a number of Athens citizens were aware that the affair had twice resulted in gunfire. The district court made much of the fact that media coverage of the two shooting incidents was limited, but we do not regard this as controlling because there was testimony that word of the shootings had spread beyond the police department itself. It is clear that employees of the bank where the woman worked knew of the shootings, and, in addition, Chief Price could reasonably think that news of the shootings would travel from person to person in the community.

ted that the extramarital sexual relationship was a major reason for the dismissal, Major Wallace testified that it was not the only cause. Rather, Wallace's testimony, taken as a whole, indicates that the constitutionally permissible reasons for the firing played just as important a role in the dismissal as the constitutionally impermissible reasons.[7] In discussing the reasons for the discharge, Wallace testified as follows:

MR. GALIS (attorney for defendants):

Q Mr. Wallace, if you will, explain one thing for us please. To the best of your knowledge and based on your recommendations, has the discipline in this case been administered solely because there has been an affair with another woman?

A No sir.

Q Has it been administered because that affair has on *two separate occasions erupted publicly and in such a fashion as to directly involve the Police Department*?

A Yes sir.

Q And in investigating this last incident and in talking with Officer Smith in that investigation going back in time and finding out from Officer Smith what his activities were between the incident back in the early part of '76, and his activities up to June of '77, did you discover that because of his affair he had been *neglecting certain duties as a police officer*?

A That's correct.

Q *Are those the factors, basically, that prompted the disciplinary action as far as you were concerned*?

A And disrepute on the Department by people who were aware that Willie's car was shot up, his windshield broken out, people at the bank knew that he had been at the social event. *The people in general knew what this affair had ended in on this occasion.*

(Emphasis added).[8] Moreover, the testimony of Wilbur Jones reveals that the Personnel Board's decision to uphold the dismissal was largely based on Smith's failure to report the theft of his gun. According to Jones, the Board was especially alarmed because "she probably could have shot somebody else, shot [Smith's] wife or something."

In addition to the direct testimony concerning the reasons for the discharge, there are other signs that Officer Smith would have been fired for the constitutionally permissible reasons in any event. First, undisputed testimony established that neither the first nor the second departmental investigation was undertaken until the department was notified that a shooting had taken place. Second, three witnesses testified that to their knowledge the police department had never fired anyone for engaging in an extramarital sexual relationship. Taken together, these two pieces of information tend to show that the police department was more concerned about Smith's involvement in gunplay, his neglect of duty, and his failure to report the theft of his gun

7. One of the difficulties in evaluating the testimony in this case is that the words "affair" and "relationship" were used in at least two different senses during the trial. At times the words appear to have been used to refer merely to the type of association involved in the case (an extramarital sexual relationship). At other times, however, the words appear to have been used to refer to the relationship with its attendant results (gunplay, neglect of duty, etc.). In our view, the district court failed adequately to distinguish between the two uses of the terms, and we are convinced that its failure to make the distinction contributed significantly to its conclusion that the "affair" was the sole cause of the discharge.

8. Though Major Wallace testified that on-duty loitering would not warrant dismissal if it occurred only once or twice, we think that the record established the fact that the police department viewed Smith's visits as habitual. Not only were the visits numerous, but there is record evidence that Chief Price became aware of them after the first shooting incident. Even if the visits could be characterized as a first offense, however, there is no reason why the police department could not deem the visits to be worthy of dismissal when viewed in conjunction with Smith's other offenses.

than it was with the extramarital sexual relationship itself. Third, the fact that the Wallace memorandum, which explained the results of the investigation and detailed the reasons for the firing, listed as a reason for discharge each offense upon which the police department relied at trial to justify the firing militates in favor of the view that those reasons were not conjured up after the fact as rationalizations for a decision actually made on the basis of the affair.

■ In light of all of the evidence, we are left with the definite and firm conviction that the district court's *Mt. Healthy* ruling was mistaken. In our view, the district court's conclusion that Officer Smith would not have been discharged without regard to his involvement in an extramarital relationship "does not reflect the truth and the right of the case." *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 501 (5th Cir.), *cert. denied*, ‒‒ U.S. ‒‒, 100 S.Ct. 277, 62 L.Ed.2d 190 (1979). Rather, we conclude that the constitutionally permissible reasons for the firing are "*both* true *and* a sufficient basis for [the dismissal], such that the same decision would have been made in the absence of constitutionally protected expression." *Love v. Sessions*, 568 F.2d 357, 361 (5th Cir. 1978).[9] Therefore, we hold that the dis-

charge of Officer Smith was constitutionally permissible.[10]

■ Having determined that the police department acted constitutionally in discharging Officer Smith, we can briefly dispose of the other issues involved in this appeal. Agreeing with Officer Smith's claim that the City Merit System Rules concerning dismissal and all of the Police Department Rules and Regulations were vague and overbroad on their face, the district judge struck them down in their entirety. We reverse. In order to meet he hurdle of the Article III "case or controversy" justiciability requirement, a plaintiff must show that he has suffered some threatened or actual injury resulting from the actions of the defendant. *See, e. g., Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–2205, 45 L.Ed.2d 343 (1975). In the case of regulations governing speech or conduct, a threat of interference with rights of the plaintiff beyond that implied by the mere existence of the regulations must be shown. *United Public Workers v. Mitchell*, 330 U.S. 75, 90–91, 67 S.Ct. 556, 565, 91 L.Ed. 754 (1947). Officer Smith's challenge to the regulations which were not asserted as a basis for his discharge is nonjusticiable because he has suffered no injury from them beyond the fact that they exist; Smith has never claimed that he

**9.** In our view, the district court overemphasized the role of what we assume for purposes of analysis to be the constitutionally impermissible reason for the firing and underemphasized the role of the constitutionally permissible reasons, thereby creating precisely the windfall against which the *Mt. Healthy* Court warned, for the district court's ruling placed Smith "in a better position as a result of the [affair] than he would have occupied had he done nothing." 429 U.S. at 285, 97 S.Ct. at 575.

**10.** The district court did not address the vagueness of the regulations as applied to Officer Smith's conduct. Indeed, the district court specifically addressed only one of the three regulations which provided a permissible basis for the firing ("conduct unbecoming an officer"). We hold that the rules which provided the basis for the permissible reasons for the firing are not vague as applied to Smith's conduct. The rule concerning loitering in uniform clearly gave fair notice that Smith's conduct was proscribed. The rule governing proper care of

departmental equipment required officers to use the equipment "within established Departmental Procedures." Major Wallace testified that the departmental procedure explained in the law enforcement code of ethics and the officers' oath of office compelled an officer to report the occurrence of criminal activity (in this case, the theft of the gun). With an explanation of the meaning of "established departmental procedure" so readily available, the rule is not vague. Nor do we think that the ordinary person would be left guessing whether involvement with reckless gunplay outside the line of duty would amount to "conduct unbecoming an officer." As the Fourth Circuit stated in *Allen v. City of Greensboro*, 452 F.2d 489 (4th Cir. 1971), when conduct is properly the subject of discipline even in the absence of a rule, the actor will not be entitled to challenge the regulation on the theory that it is vague as applied to his conduct. Such is the case here.

desired to engage in activity violative of those regulations. Similarly, because Smith would have been dismissed in any event and, therefore, no injury resulted from application of the regulations which we classified above as impermissible reasons for the firing, no justiciable case or controversy exists with respect to them. Finally, we decline to address the facial vagueness and overbreadth of the regulations which were the cause of Officer Smith's dismissal, because we are convinced that the regulations are not substantially vague or overbroad "judged in relation to [their] plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830 (1973). *See also Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 59–60, 96 S.Ct. 2440, 2446–2447, 49 L.Ed.2d 310 (1976).

Therefore, the judgment of the district court is REVERSED with directions to enter judgment for appellants.

JAMES C. HILL, Circuit Judge, concurring specially:

I protest the panel's disingenuous new brand of judicial "restraint," which is to "avoid" constitutional conclusions by assuming them. By their own admission, the panel's entire analysis "assumes" that the United States Constitution guarantees the right to commit adultery. *Contra, Griswold v. Connecticut*, 381 U.S. 479, 498–99, 85 S.Ct. 1678, 1689, 14 L.Ed.2d 510 (1965) (Goldberg, J., concurring); *Poe v. Ullman*, 367 U.S. 497, 553, 81 S.Ct. 1752, 1782, 6 L.Ed.2d 989 (1961) (Harlan, J., dissenting). *But cf. Doe v. Commonwealth's Attorney*, 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976) (mem.), *aff'g* 403 F.Supp. 1199 (E.D. Va.1975) (sodomy); *Hollenbaugh v. Carnegie Free Library*, 436 F.Supp. 1328 (W.D.Pa. 1977) (fornication), *aff'd mem.*, 578 F.2d 1374 (3d Cir.), *cert. denied*, 439 U.S. 1052, 99 S.Ct. 734, 58 L.Ed.2d 713 (1978). But while thus conceding the necessity of reaching the issue, the panel curiously refrains from deciding it, preferring instead merely to intimate their views in dictum.

The panel's constitutional "assumption" exemplifies the modern judicial hubris that causes federal judges to claim constitutional sanction for their personal views. Once upon a time, "[n]o one would [have] suggest[ed] that the First Amendment permits . . . adultery." *Roth v. United States*, 354 U.S. 476, 512, 77 S.Ct. 1304, 1323, 1 L.Ed.2d 1498 (1957) (Douglas, J., dissenting). This was so because, before the Constitution entered the bedroom, adultery was considered "an offense against the marriage relation . . . belong[ing] to the class of subjects that each state controls in its own way." *Southern Surety Co. v. Oklahoma*, 241 U.S. 582, 586, 36 S.Ct. 692, 694, 60 L.Ed. 1187 (1916). The Georgia legislature has acted, declaring adultery to be a misdemeanor criminal offense. Ga. Code Ann. § 26–2009 (Harrison 1978). But alas, this legislation does not comport with the panel's personal conceptions of modernity, so they "assume" it to be unconstitutional. The burlesque of constitutional liberty continues.

The normative propriety of adulterous sexual relations plainly admits of differing views. To suggest, however, that the *Constitution* speaks to the matter is but an obvious pretext for judicial legislation. To this I can not and will not assent. The district court held that appellee was fired for engaging in constitutionally protected "association." That is the holding we review. Contrary to what the panel "assumes," I believe that this holding was error and would reverse on that basis.