Edward BOWEN, et al.,
Plaintiffs-Appellants,

v.

Charlie WATKINS, Chief of Police of the City of Columbus, Mississippi, Etc., et al., Defendants-Appellees.

No. 81–4029.

United States Court of Appeals,
Fifth Circuit.

March 8, 1982.

---

Wilbur O. Colom, Columbus, Miss., for plaintiffs-appellants.

Dewitt Hicks, Lydia Quarles, Columbus, Miss., for defendants-appellees.

Before WISDOM, SAM D. JOHNSON, and WILLIAMS, Circuit Judges.

WISDOM, Circuit Judge:

This case requires us to determine whether the exercise of first amendment rights of expression by public employees has led to adverse consequences for those employees and to determine the scope of the protection granted public employees who engage in constitutionally protected activity. In addition, the case presents difficult issues concerning the liability of the various officials involved in deciding on the adverse consequences and of the municipality for any constitutional violations.

The plaintiffs/appellants, Donald Westbrook and Edward Bowen, were sergeants in the police force of Columbus, Mississippi, as was Billy Pickens, intervenor,[1] when a position as lieutenant in the Uniform Division became available. The Columbus Civil Service Commission certified all three men as eligible for promotion. On the written tests Bowen scored 119, the highest score, Westbrook 97, and Pickens 95. Charlie

---

1. Pickens intervened in the action in the district .court. He has not taken an appeal.

Watkins, the Chief of Police, recommended to the City Council that Pickens be promoted, and the City Council accepted his recommendation. Bowen and Westbrook, aware of reports unfavorable to Pickens in the police files, were surprised that neither of them received the promotion. Upon meeting with Chief Watkins, Bowen learned that several incidents in Pickens's record had not been disclosed to the City Council. Bowen and Westbrook then requested a hearing before the City Council, and at the hearing, they presented charges that (1) Pickens had engaged in criminal breaking and entering, resulting in his discharge in June 1967, (2) Pickens, while intoxicated, wrongfully discharged his firearm in November 1970, (3) Pickens, while driving when intoxicated, ran over and then threatened to kill one Stanley Jones in 1978, and (4) Pickens was discharged for embezzlement in December 1967. As a result of the hearing, the City Council rescinded Pickens's promotion on April 30, 1979. Police Chief Watkins then decided to transfer Lt. Oswalt from the Detective Division to fill the vacancy rather than to promote anyone on the eligibility list. Bowen and Westbrook filed this action for declaratory, monetary, and injunctive relief against Watkins, the city, the Mayor, and several City Council members, alleging a violation of the plaintiffs' constitutional right of free speech under 42 U.S.C. § 1983. The night before the scheduled deposition of the City Council members, on August 14, 1979, the Council ratified the transfer of Lt. Oswalt. After a bench trial, the district court rendered judgment for the defendants. On this appeal, the plaintiffs raise three arguments. First, they urge that the trial judge used the wrong legal standard, requiring the plaintiffs to show that the denial of the promotion was in retaliation for their exercise of first amendment rights. Second, they contend that, even if the trial judge employed the proper standard, requiring the plaintiffs to show that their constitutionally protected activity was a substantial factor in the decision not to promote, his finding that the request for a hearing and the filing of the suit were not substantial factors was clearly erroneous. Finally, the plaintiffs argue that the denial of promotion, if it was in violation of their constitutional rights, gives rise to liability on the part of the individual City Council members and on the part of the municipality. We reverse in part and remand.

## I. *The Legal Standard*

■ Under *Pickering v. Board of Education*, 1968, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811, public employees do not surrender first amendment rights by accepting government employment, although, in determining whether a particular communication is protected, the bona fide interest of the state, as employer, in the efficient provision of services must be balanced against the interest of the employee in the expression and the interest of the public in hearing the communication. *See generally* Note, *Free Speech and Impermissible Motive in the Dismissal of Public Employees*, 89 Yale L.J. 376, 380–82 (1979). In this case, the trial court held, and the defendants do not now dispute, that the plaintiffs' request for a hearing was constitutionally protected.[2] The issue on this appeal is

2. The trial court did not explicitly hold that filing suit is a protected activity. All parties, however, seem to assume that it is protected. We fail to see any significant differences between requesting a hearing and filing a suit that would lead to protection of one activity and denial of protection to the other. The state's interest in preventing discord among employees is the same. The allegations in the suit involve criticisms of the same parties criticized at the hearing and of the City Council members, so the working relationships disrupted by the suit are no closer than those disrupted by the hearing. In addition, the officers' interest in speaking is the same, and the public interest in resolution of the controversy and in seeing the proper officers promoted is the same. *See generally Pickering v. Board of Education*, 1968, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811.

Given the unchallenged holding on the request for a hearing and our analysis of the constitutional status of the filing of the suit, we find it unnecessary to determine whether the balancing test of *Pickering* has been refined by later decisions to produce a compelling state interest test. *See Van Ooteghem v. Gray*, 5 Cir. 1981, 654 F.2d 304 (en banc), *cert. denied,*

whether the denial of the promotion to Bowen and Westbrook was related to the request for a hearing or to the filing of the suit in such a way as to render the denial a violation of the officers' rights.

■■ The Supreme Court dealt with the causal link between protected activity and adverse action by a state employer necessary to establish a violation of constitutional rights in *Mt. Healthy City Board of Education v. Doyle*, 1977, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471. *See generally* Note, *Nonpartisan Speech in the Police Department: The Aftermath of* Pickering, 7 Hastings Const.L.Q. 1001, 1015 (1980). There, the Court was concerned with protecting the rights guaranteed by *Pickering* but at the same time wished to avoid windfalls to public employees who engaged in constitutionally protected conduct; an employee who would have been fired regardless of whether he exercised constitutional rights should not be reinstated solely because of his exercise of his rights. *See* 429 U.S. at 284–86, 97 S.Ct. at 574–575; *see also Smith v. Price*, 5 Cir. 1980, 616 F.2d 1371, 1379 & n.9. Accordingly, the Court adopted a shifting burden of proof. Initially, the employee has the burden of showing both that his activity was constitutionally protected and that it was a "substantial" or "motivating" factor in the decision of the employer. Then, the burden shifts to the employer, who may avoid liability by showing by a preponderance of the evidence that the same decision would have been made absent the constitutionally protected conduct. *See* 429 U.S. at 287, 97 S.Ct. at 576; *see generally* Note, *Free Speech and Impermissible Motive in the Dismissal of Public Employees*, 89 Yale L.J. 376, 376–77 (1979).

■ The plaintiffs here urge that, after finding the activity to be constitutionally protected, the trial judge imposed an additional requirement—that the plaintiffs show that the decision was made in *retaliation* for their request for a hearing. If indeed the trial judge imposed such a requirement, that would, of course, require us to reverse, for *Mt. Healthy* requires only that the employee show that his constitutionally protected conduct was a substantial or motivating factor in the decision. *See, e.g., D'Andrea v. Adams*, 5 Cir. 1980, 626 F.2d 469, 472, *cert. denied*, 1981, 450 U.S. 919, 101 S.Ct. 1365, 67 L.Ed.2d 345; *Goss v. San Jacinto Junior College*, 5 Cir. 1979, 588 F.2d 96, 99, *modified per curiam on other grounds*, 1979, 595 F.2d 1119. But only a strained reading of the record would support the conclusion that the trial court required a showing of retaliatory motive. The lower court explicitly and correctly stated the *Mt. Healthy* test in its order: "[P]laintiffs have not shown by a preponderance of the evidence, that their engaging in this constitutionally protected activity was a 'substantial factor' or a 'motivating factor' in defendants' decision to fill the contested lieutenant's vacancy by transfer rather than by promotion of one of the plaintiffs." Then, the court added, "Plaintiffs have failed to persuade the court that defendants' actions were retaliatory.... Likewise, the court finds the defendants' failure to promote plaintiffs during the pendency of this action does not constitute retaliation for their bringing suit." Given the correct statement of the *Mt. Healthy* test, and the plaintiffs' allegations at trial and in their complaint that the decision was "retaliatory", it is unlikely that the discussion of retaliation was anything more than an elaboration of the preceding discussion.[3]

---

451 U.S. 935, 101 S.Ct. 2031, 68 L.Ed.2d 334. *Compare Van Ooteghem v. Gray*, 5 Cir. 1980, 628 F.2d 488, 493 n.4 (compelling state interest test), *aff'd on other grounds on rehearing en banc*, 5 Cir. 1981, 654 F.2d 304, *and Henrico Professional Firefighters Ass'n v. Bd. of Supervisors*, 4 Cir. 1981, 649 F.2d 237, 243 (same) *with, e.g., Givhan v. Western Line Consol. School Dist.*, 1979, 439 U.S. 410, 414–15, 99 S.Ct. 693, 695–696, 58 L.Ed.2d 619 (balancing test); *Van Ooteghem*, 628 F.2d at 497–98 (Reavley, J., concurring) (same).

3. We reject the plaintiffs' contention that "retaliation volnon [sic] is irrelevant to the analysis". On the contrary, *Pickering* spoke of the need for teachers "to be able to speak out freely on [questions concerning public decisions about the operations of schools] without fear of retaliatory dismissal". 391 U.S. at 572, 88 S.Ct. at 1736. And certainly a retaliatory

Furthermore, the pretrial order sets out as a contested issue of fact "whether the request for a hearing by plaintiffs ... was a substantial factor in the decision not to promote either of them...." As a result, we believe that the trial judge applied the correct standard.

## II. Application of the Legal Standard

The plaintiffs assert that the record simply does not support the trial court's finding that the protected activity was not a substantial factor in the decision to transfer Lt. Oswalt, noting that the Chief of Police, the Mayor, and some of the Councilmen testified that unrest in the department was a primary consideration behind the decision. Also, the plaintiffs urge that the filing of the suit must have been a substantial factor in Watkins's decision not to recommend any promotions during the pendency of the litigation.[4] The defendants present two counterarguments. First, they assert that the transfer was motivated by the availability of extra lieutenants in the Detective Division and by budgetary concerns that arose after Pickens's promotion and before the rescission of the promotion. Second, they reason that unrest is not a constitutionally protected activity, and it was the unrest rather than the request for a hearing or the filing of the suit that was a consideration in the decision.

■ The determination whether a given act was "a substantial" or "a motivating" factor is one of fact to be made by the trial court. See Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274, 285–87, 97 S.Ct. 568, 575–576, 50 L.Ed.2d 471; Van Ooteghem v. Gray, 5 Cir. 1980, 628 F.2d 488, 491–93, aff'd on other grounds on rehearing en banc, 1981, 654 F.2d 304, cert. denied, 451 U.S. 935, 101 S.Ct. 2031, 68 L.Ed.2d 334. Accordingly, we may not reverse unless the trial court's judgment was clearly erroneous, Fed.R.Civ.P. 52(a). Van Ooteghem, 628 F.2d 488, 491–92. That is, in Justice

Reed's frequently quoted words, the reviewing court will reverse only if "on the entire evidence, it is left with the definite and firm conviction that a mistake has been committed". United States v. United States Gypsum Co., 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746, 747, 766; ViCon, Inc. v. DMI Corp., 5 Cir. 1981, 657 F.2d 768, 772; see generally 9 C. Wright & A. Miller, Federal Practice and Procedure § 2585 (1971).

■ Although the standard of review of a trial judge's finding of fact requires us to give considerable respect to the trial judge's conclusion, our own review of the evidence in this case persuades us that a mistake has been committed, at least with respect to Chief of Police Watkins. Watkins himself testified that the unrest was a "major" factor in his decision; we fail to see then how it could constitute less than a "substantial" factor under Mt. Healthy. Nor does the defendants' argument that budgetary concerns and availability of excess personnel in the Detective Division motivated the transfer change our conclusion. The record does show credible evidence that the police department was over its budget and had incurred substantial overtime expense because of a flood occurring after the promotion of Pickens. Also, the Chief of Police continued to move men out of the Detective Division, in effect lending credibility to the contention that Lt. Oswalt was not needed there. Thus, the trial court could have believed that, to save on compensation expense, Watkins chose to transfer an employee already drawing a lieutenant's pay rather than to increase the number of employees drawing the higher salary. Nevertheless, the budgetary concern was not so overwhelming that unrest could be considered an insubstantial factor. The opinion in Mt. Healthy clearly contemplates that a decision may be the product of more than one substantial factor; it refers to "a substan-

motive will satisfy the first stage of the Mt. Healthy test.

**4.** The plaintiffs moved to amend their complaint at trial after Chief Watkins testified that

he had decided not to promote anyone during the pendency of the litigation. The defendants did not object, and the court granted leave to amend.

tial factor", 429 U.S. at 287, 97 S.Ct. at 576 (emphasis added). Moreover, the second step of the analysis—determining whether the same decision would have been reached absent the impermissible factor—suggests that if the defendant prevails at that point, even though the impermissible factor was substantial, other factors were also substantial in reaching the decision. Consequently, even if budgetary considerations were a substantial factor—and there is no finding to that effect—we remain convinced that the unrest was also a substantial factor in the decision of the Chief of Police.

Further, Watkins admitted in testimony that he decided not to promote anyone during the pendency of the litigation, and no one was promoted while the case was before the district court. Again, given this testimony, we fail to see how the decision to file suit could be anything but a substantial factor in the decision not to promote. By stating that the decision was conditioned on the pendency of the litigation, Watkins conceded sufficient causation to fulfill the first requirement of *Mt. Healthy*.

The trial court's finding that speech was not a substantial factor in the decision to transfer encompassed all the defendants. With respect to the individual defendants other than the Chief of Police, we affirm its finding.[5] The record shows that all City Council members present except Councilman Still voted in favor of the transfer, and the Mayor did not vote. The plaintiffs presented evidence that the Mayor, Councilman Still, and one other councilman, Thomas, were primarily concerned with unrest, but the other councilmen who testified stated that unrest was not a substantial factor. Although we believe that unrest was a substantial factor in the decision of Councilman Thomas, his vote was the only one in favor of the transfer in which we are prepared to hold as a matter of law that the unrest played such a role. His vote was not decisive, however, so the plaintiffs were not harmed by it. Liability under § 1983 requires causation,[6] and a single vote is not a cause when the same decision would have been reached without that vote.[7] Consequently, we are not firmly convinced that the trial judge was mistaken in holding that unrest was not a substantial factor in the decision of the City Council. Rule 52(a) then requires that we not disturb that finding.[8]

██ The defendants contend, however, that even if unrest was a substantial factor in the decision, unrest itself is not a constitutionally protected activity but only the result of that activity, and that the *Mt. Healthy* analysis is not applicable to results of constitutionally protected activity. The defendants cite no authority for this position, and we have not discovered any. On the contrary, the cases seem to rely on the unstated premise that the opposite is true; in only the rare case will an official assert that he was motivated by the protected

---

5. This question is, of course, distinct from the questions of municipal liability and liability of individual councilmen for failure to prevent the challenged action, to be discussed below.

6. *See, e.g., Anderson v. Nosser*, 5 Cir. 1972, 456 F.2d 835, 841 (en banc), *cert. denied*, 409 U.S. 848, 93 S.Ct. 53, 34 L Ed.2d 89; *see generally Monell v. Dept. of Social Servs.*, 1978, 436 U.S. 658, 691–92, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611, 636; *Sims v. Adams*, 5 Cir. 1976, 537 F.2d 829, 831.

7. *Cf. Rheuark v. Shaw*, 5 Cir. 1980, 628 F.2d 297, 306, *cert. denied*, 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (county commission's request to judge to limit hiring was not a cause in fact of judge's failure to hire where judge had power to hire and to compel payment of compensation); W. Prosser, *Handbook of the Law of Torts* § 41 (4th ed. 1971) (except in the case of two independent sufficient causes, "[a] cause is a necessary antecedent"; without it, the event would not have occurred).

8. Nor will we disturb the trial judge's finding that the City Council did not violate the plaintiffs' right to file suit. There was no evidence that the City Council ever made any decision not to promote anyone pending the termination of the litigation; indeed, the City Council members who testified stated that they were unaware of Chief Watkins's decision. Nonetheless, if the decision violated the plaintiffs' rights, the Council might be liable for failure to prevent the violation. *See* note 5.

activity itself.[9] In the typical case, the official asserts either that he acted entirely independently of the speech, *see generally* Note, *Free Speech and Impermissible Motive in the Dismissal of Public Employees*, 89 Yale L.J. 376, 380 (1979), or that the effect of the speech is to impair somehow the efficiency of the city's provision of the service in which the plaintiff is employed. Thus, in *Mt. Healthy*, the superintendent of schools did not assert an interest in preventing communication but rather an interest in cultivating "good school relationships" and in preventing "concern" among students and within the community. 429 U.S. at 283 n.1, 97 S.Ct. at 574. Despite this intermediate step in the chain of causation, the Supreme Court was willing to view the speech as a substantial factor in the ultimate result of dismissal. *See also, e.g., Smith v. Price*, 5 Cir. 1980, 616 F.2d 1371; *Kingsville Independent School District v. Cooper*, 5 Cir. 1980, 611 F.2d 1109, 1113 & n.4; *Kannisto v. City and County of San Francisco*, 9 Cir.

1976, 541 F.2d 841, 843–44, *cert. denied*, 1977, 430 U.S. 931, 97 S.Ct. 1552, 51 L.Ed.2d 775.

■ The application of the *Mt. Healthy* analysis to such cases need not signify that the assertion of the government's interest as employer is a sham. We do not doubt the trial court's conclusion that the denial of promotion here was motivated by a desire to diminish unrest rather than by a simple desire to censor. Nonetheless, we recognize that unrest was a necessary result of the request for a hearing,[10] and that the unchallenged holding that the request was constitutionally protected means that the city's interest in preventing the speech, with its concomitant unrest, did not, in the eyes of the trial judge, outweigh the interest of the plaintiffs in speaking and the interest of the public in encouraging the speech. *See Pickering v. Board of Education*, 1968, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811.[11] Although cases may arise in

9. When the suppression of speech itself is the sole governmental interest, the governmental unit's action should be judged by ordinary first amendment standards, for the government has no special interest as employer that would raise the special considerations of *Pickering* that lead to balancing. *See* 391 U.S. at 568, 88 S.Ct. at 1734 ("[T]he state has interests *as employer* in regulating the speech of its employees that differ slightly from those it possesses in connection with regulation of the speech of the citizenry in general.") (emphasis added); *see generally Mabey v. Reagan*, 9 Cir. 1976, 537 F.2d 1036, 1045; Note, *Nonpartisan Speech in the Police Department: The Aftermath of* Pickering, 7 Hastings Const.L.Q. 1001, 1010 (1980); Note, *Free Speech and Impermissible Motive in the Dismissal of Public Employees*, 89 Yale L.J. 376, 381–82 (1979).

10. We are unpersuaded by the defendants' contention that the unrest was not a product of the request for a hearing. If, as the defendants asserted, competition among those eligible for promotion always occurs and always leads to undesirable unrest, then the standard practice should have been to fill vacancies by transfer whenever possible. Yet the record shows that that was not the case. Indeed, this was the first vacancy filled by transfer, and the only factor differentiating this situation from the ordinary vacancy was the request for a hearing. We must conclude then that the request for a hearing caused the unrest.

11. In that respect, this case differs significantly from the apparently similar case of *Hoopes v. Nacrelli*, E.D.Pa.1981, 512 F.Supp. 363. There, a police chief was demoted after testifying against the Mayor in a federal prosecution. In the course of the investigation, the Chief of Police had cooperated by intentionally supplying the Mayor with false information. The court granted the defendants—the Mayor and City Councilmen—summary judgment on the first amendment claims, relying on the "well-established principle that in certain circumstances an employee's public criticism of a supervisor, although otherwise protected, may be so injurious to the working relationship between the parties that dismissal is permissible because it is the only practical alternative". *Id.* at 364. At the same time, the court permitted amendment of the complaint to include a claim based on cooperation with federal law enforcement authorities. We agree with the *Hoopes* court's view that statements injurious to close working relationships may be unprotected. *See Givhan v. Western Line Consol. School Dist.*, 1979, 439 U.S. 410, 414–15 & nn.3–4, 99 S.Ct. 693, 695–696, 58 L.Ed.2d 619, 624 & nn.3–4; *Pickering v. Bd. of Educ.*, 1968, 391 U.S. 563, 570 & n.3, 88 S.Ct. 1731, 1735, 20 L.Ed.2d 811, 818 & n.3; *Sprague v. Fitzpatrick*, 3 Cir. 1976, 546 F.2d 560, 564, *cert. denied*, 1977, 431 U.S. 937, 97 S.Ct. 2649, 53 L.Ed.2d 255. In *Hoopes*, there was a close working relationship dependent on confidence and trust. The balance in each case is to be struck on the basis of the particular circumstances, *see Pickering v. Bd.*

which the results of protected conduct are so far removed from the activity that an adverse employment decision based on those results is not constitutionally impermissible,[12] this case does not fall within that category. The unrest was a predictable and inevitable result of the request for a hearing. To hold that the government could permissibly base an adverse employment decision on that result negates the holding that the speech is protected: it is scant comfort indeed to a public employee considering expression to know that he may not be fired for his expression if he may nevertheless be fired for its inevitable results. In some cases, of course, an employee may be subject to adverse consequences because of the results of his speech. But those are the cases where, in the balance mandated by *Pickering*, the interests of the government outweigh the interests of the speaker and the public, and the speech is unprotected. When the scales tip in the opposite direction, the public employee should be free from fear that the probable consequences of his speech will cost him his job.

At the same time, neither Bowen nor Westbrook should receive a windfall for exercising his constitutional rights; if they would not have received the promotion regardless of their request for a hearing, they should not receive it because they requested a hearing. Accordingly, the *Mt. Healthy* analysis allows the defendants to show that the same decision would have been made

absent the constitutionally protected activity. 429 U.S. at 285–87, 97 S.Ct. at 575–576. In this case, the defendants produced evidence that budgetary problems and the availability of unnecessary manpower in another division led Watkins to recommend a transfer rather than a promotion. The plaintiffs, on the other hand, produced evidence tending to show that the budgetary problems were minor, if they existed at all. It is not our function to weigh this evidence, as each side urges us to do. On the contrary, the question is one of fact, to be resolved by the trial judge. Consequently, we remand to the district court for a determination whether the same decision would have been reached absent the constitutionally protected conduct.

### III. Liability of the City Council

The plaintiffs urge that the City Council members are liable for the transfer of Lt. Oswalt in May 1979 because, although it is stipulated that the Chief of Police acted alone in May, the City Council ratified the action in August 1979. Also, the plaintiff asserts that the City Councilmen are liable for the Chief's decision not to promote anyone during the pendency of the litigation because several testified at trial that, although they did not know of the decision, they would approve it.

The trial court, finding no constitutional violations, did not reach these issues. Our remand renders it unnecessary for us to decide them finally now. Nonetheless, we think it appropriate to sketch out the con-

---

of Educ., 1968, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811; *Sprague v. Fitzpatrick*, 3 Cir. 1976, 546 F.2d 560, 566 (Seitz, C. J., concurring) (disruption will not always tip the scales), *cert. denied*, 1977, 431 U.S. 937, 97 S.Ct. 2649, 53 L.Ed.2d 255, and there was no showing of such a relationship in this case. Cf. *Pickering* (criticism of ultimate employer protected for it does not destroy working relationships). Nor was there any showing of damage to the relationship between the plaintiffs here and the Chief of Police; indeed, Watkins insisted that he bore "no hard feelings", and Westbrook was subsequently promoted, suggesting that he was able to maintain any necessary working relationship. Thus, the trial court's decision that the speech here, unlike that in *Hoopes* and *Sprague*, was constitutionally protected, is justified.

12. Consider, for example, the following case. A public school teacher delivers a speech on a controversial topic in public and, as a consequence, achieves some notoriety in the community. A reporter covering the story checks into the teacher's background and discovers that his credentials are forged, and the teacher is fired. Although the discovery of the forged credentials is a result of the speech and the dismissal is therefore motivated by a result of protected activity, we do not think that *Mt. Healthy* would apply; the "substantial factor" test requires some greater nexus. By analogy to causation in tort law, if the result is not a foreseeable consequence of the protected activity, it would not trigger the *Mt. Healthy* analysis.

siderations that may arise on remand. *See Schneider v. City of Atlanta,* 5 Cir. 1980, 628 F.2d 915, 920.

▬ As we have discussed, we affirm the trial court's holding here that the request for a hearing was not a substantial factor in the decision of the City Council to ratify the transfer. Even if Chief of Police Watkins is held liable for the transfer under the *Mt. Healthy* test, the City Councilmen cannot be held liable for his tortious action solely on the basis of respondeat superior.[13] *See Monell v. Department of Social Services,* 1978, 436 U.S. 658, 690–95, 98 S.Ct. 2018, 2035–2038, 56 L.Ed.2d 611 (dictum); *e.g., Watson v. Interstate Fire & Casualty Co.,* 5 Cir. 1980, 611 F.2d 120, 123; *Baskin v. Parker,* 5 Cir. 1979, 602 F.2d 1205, 1208 (on rehearing) (per curiam); L. Tribe, American Constitutional Law 6 (Supp.1979); *Developments in the Law—Section 1983 and Federalism,* 90 Harv.L.Rev. 1133, 1207 (1977). Although supervisory officials cannot be held liable solely on the basis of their employer-employee relationship with a tortfeasor, they may be liable when their own action or inaction, including a failure to supervise that amounts to gross negligence or deliberate indifference, is a proximate cause of the constitutional violation. *See, e.g., Owens v. Haas,* 2 Cir. 1979, 601 F.2d 1242, 1246, *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407; *Redmond v. Baxley,* E.D.Mich.1979, 475 F.Supp. 1111, 1116; *Cook v. City of Miami,* S.D.Fla.1979, 464 F.Supp. 737; *see also Monell v. Department of Social Services,* 436 U.S. at 694 n.58, 98 S.Ct. at 2037. The Tenth Circuit drew the distinction well in *McClelland v. Facteau* :

> *Respondeat superior* is a doctrine of vicarious liability based upon public policy—the notion that the person who benefits by the acts of the servant must pay for wrongs committed by the servant; the one held liable as master need not be at fault in any way. [Citation omitted.] Under direct liability, plaintiff must show

the supervisor breached a duty to plaintiff which was the proximate cause of the injury. The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present. . . .

10 Cir. 1979, 610 F.2d 693, 695.

▬ The City Councilmen would not be liable if they delegated their authority to the Chief of Police and he committed a constitutional tort, unless the delegation itself caused the tort. Thus, in *Watson v. Interstate Fire & Casualty Co.,* 5 Cir. 1980, 611 F.2d 120, this court held that a sheriff who delegated responsibility to his subordinates and was not aware of an allegedly illegal incarceration and commitment until after the fact was not liable to the injured party where he did not fail to supervise properly. Accordingly, we conclude that, to impose liability on a supervisory official, section 1983 requires more than a simple ratification of an impermissible act when the ratification is based on independent legitimate reasons. To prevail against the City Councilmen, the plaintiffs must show a failure to supervise properly that caused the harm. *See Sims v. Adams,* 5 Cir. 1976, 537 F.2d 829. Usually, a failure to supervise gives rise to section 1983 liability only in those situations in which there is a history of widespread abuse. Then knowledge may be imputed to the supervisory official, and he can be found to have caused the later violation by his failure to prevent it. *Developments in the Law—Section 1983 and Federalism,* 90 Harv.L.Rev. 1133, 1207 (1977); *see, e.g., Henzel v. Gerstein,* 5 Cir. 1979, 608 F.2d 654, 658 & n.5; *McClelland v. Facteau,* 10 Cir. 1979, 610 F.2d 693, 697; *Schramm v. Krischell,* D.Conn.1979, 84 F.R.D. 294, 296; *cf. Knight v. Colorado,* D.Colo.1980, 496 F.Supp. 779 (no liability in spite of history of abuses because supervisor took action to prevent further abuses); *see generally* Note, *Municipal Liability under Section 1983: The Meaning of "Policy or*

---

**13.** There is some authority at the district court level for subjecting supervisory officials to declaratory and injunctive liability solely on the basis of respondeat superior. *See Ganguly v. New York State Dept. of Mental Hygiene—Dunlap Manhattan Psychiatric Center,* S.D.N.

Y.1981, 511 F.Supp. 420, 424. *But see Monell v. Dept. of Social Servs.,* 436 U.S. at 694 n.58, 98 S.Ct. at 2037; *Rizzo v. Goode,* 1976, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561; *Developments in the Law—Section 1983 and Federalism,* 90 Harv.L.Rev. 1133, 1208 (1977).

*Custom,"* 79 Colum.L.Rev. 304, 316–18 (1979). In some cases, though, the courts have viewed a single abuse as so flagrant that it gives rise to an inference that the supervisory official must have breached his duty of proper supervision. *Owens v. Haas,* 2 Cir. 1979, 601 F.2d 1242, *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407; *see Redmond v. Baxley,* E.D.Mich.1979, 475 F.Supp. 1111, 1117 (import of pervasive abuse is as basis for inferring knowledge on part of supervisor). The simple act of ratification did not cause the violation in this case; only if the trial judge finds that Watkins's actions were so blatantly abusive that one can infer a failure to supervise properly can the City Council be liable for the initial transfer.[14] Then, and only then, the ratification might become relevant as a failure to act to prevent future constitutional violations, which might include the decision not to promote during the pendency of the litigation.

## IV. *Municipal Liability*

The plaintiffs have also included the city as a defendant. The question of municipal liability too the trial court found unnecessary to resolve, and we need not decide it now, although we offer some guidance to the trial court in case it arises on remand.

 Municipal liability presents somewhat different considerations from the liability of supervisory officials. Again, it is clear that respondeat superior may not be the basis for liability. *Monell v. Department of Social Services,* 436 U.S. at 690–95, 98 S.Ct. at 2035–2038[15]; *e.g., Walters v. City of Ocean Springs,* 5 Cir. 1980, 626 F.2d

1317; *Turpin v. Mailet,* 2 Cir. 1980, 619 F.2d 196, 199, *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475. Instead, a municipality is liable only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury". *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037. Of course, this standard creates difficult questions with respect to which acts constitute a "policy or custom" that are not yet fully resolved by the courts. *See, e.g., Turpin v. Mailet,* 2 Cir. 1980, 619 F.2d 196, 199, *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475; *Owens v. Haas,* 2 Cir. 1979, 601 F.2d 1242, 1246, *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407. At some level of authority, there must be an official whose acts reflect governmental policy, for the government necessarily acts through its agents. Thus the question becomes one of identifying the official who has authority to make policy; then municipal liability attaches to acts performed pursuant to that policy. When an official has final authority in a matter involving the selection of goals or of means of achieving goals, his choices represent governmental policy. *See Schneider v. City of Atlanta,* 5 Cir. 1980, 628 F.2d 915, 920; *see generally* Schnapper, *Civil Rights Litigation After* Monell, 79 Colum.L.Rev. 213, 213–21 (1979). If a higher official has the power to overrule a decision but as a practical matter never does so, the decision-maker may represent the effective final authority on the question. Finally, even if there is an appeal of an action but the appellate body defers in substantial

14. We reject the plaintiff's reading of *Turpin v. Mailet,* 2 Cir. 1980, 619 F.2d 196, *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475. There, ratification of a first arrest was important only insofar as it constituted a policy pursuant to which a second unconstitutional arrest was made. *Turpin* does not stand for the proposition that ratification of an unconstitutional act renders the city liable for that act under *Monell.*

15. This aspect of *Monell* was dictum, as pointed out in Justice Stevens's concurrence, for *Monell* clearly involved acts pursuant to a municipal policy, so vicarious liability on a respondeat superior theory concededly was not before the Court, 436 U.S. at 701 n.66, 98 S.Ct. at

2041. 436 U.S. at 714, 98 S.Ct. at 2047 (Stevens, J., concurring); *see* Schnapper, *Civil Rights Litigation After* Monell, 79 Colum.L. Rev. 213, 215 (1979); Note, *Section 1983 Municipal Liability and the Doctrine of Respondeat Superior,* 46 U.Chi.L.Rev. 935 (1979). Nonetheless, the dictum has been uniformly accepted as law. *See, e.g., Walters v. City of Ocean Springs,* 5 Cir. 1980, 626 F.2d 1317; *Baskin v. Parker,* 5 Cir. 1979, 602 F.2d 1205, 1208 (on rehearing) (per curiam) (*Monell* statement on respondeat superior applies to liability of supervisory officials as well as to municipalities); *see generally* L. Tribe, American Constitutional Law 6 (Supp.1979).

part to the judgment of the original decision-maker, the original decision may be viewed as the government's policy. *Id.* at 219, 223. These questions of the division of authority between Chief of Police Watkins, who initiated promotions and whose recommendations were uniformly accepted prior to the rescission of Pickens's promotion, and the City Council, which held at least a veto power and exercised it in the rescission, are pre-eminently factual and are for decision by the trial judge in the first instance. *Schneider v. City of Atlanta*, 5 Cir. 1980, 628 F.2d 915, 920; *Turpin v. Mailet*, 2 Cir. 1980, 619 F.2d 196, 201, *cert. denied*, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475. If Chief of Police Watkins is the final authority in this area, and his choices represent municipal policy, the municipality is liable for any § 1983 violation for which he is liable. If the City Council is the final authority, the city is liable for any actionable failure to prevent § 1983 violations on their part.

The case is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.