**James BATTLE, Plaintiff-Appellant,**

v.

**Solon MULHOLLAND et al., Defendants-Appellees.**

**No. 29898.**

United States Court of Appeals, Fifth Circuit.

March 23, 1971.

Nausead Stewart, Jackson, Miss., for plaintiff-appellant.

James E. Smith, Carthage, Miss., for defendants-appellees.

Before RIVES, THORNBERRY and CLARK, Circuit Judges.

RIVES, Circuit Judge:

James Battle filed suit in the United States District Court for the Southern District of Mississippi seeking an injunction reinstating him to his employment as a police officer in the city of Carthage, Mississippi, and ancillary relief. Jurisdiction was based on 28 U.S.C. § 1343 and 42 U.S.C. § 1983. The defendants were the mayor, chief of police, and members of the board of aldermen of Carthage. Summary judgment was entered for the defendants and Battle appeals.

The facts giving rise to this litigation are simple. Battle was employed as a police officer in Carthage from December 1966 to July 1969. Battle apparently performed his duties and conducted himself to the satisfaction of all concerned until the event which led to the end of his employment.

In July 1969, it came to the attention of the city officials that Battle, a Negro, along with his wife, had been allowing two white women who were working on an anti-poverty program to board at their home. On July 18, 1969, the mayor of Carthage, Solon Mulholland, discussed this matter with Battle. He told Battle that he was worried about the effect the boarders would have on the police force and the community; that, because of racial tensions in the community, police officers should not be centers of controversy and that Battle's actions were not in keeping with this policy of neutrality.

Mulholland then discussed the matter with members of the board of aldermen and the city attorney. The parties dis-

agree as to whether Battle was fired or resigned, but, in any event, he turned in his uniforms on July 19, 1969, and ceased acting as a police officer from that date.

The defendants moved to dismiss the complaint for lack of jurisdiction because it failed to allege a claim arising under the Constitution or laws of the United States. The district court treated this as a motion for summary judgment. Relying on Section 3374–37, Mississippi Code 1942, which authorizes the discharge of some public employees without cause,[1] the district court held that it was immaterial whether Battle resigned or was discharged with or without cause, and that there was no genuine issue of material fact between the parties. The court went on to hold that the complaint did not allege a claim under 42 U.S.C. § 1983, but that the claim arose solely under state law. The motion for summary judgment was granted for want of a genuine issue of fact and for lack of jurisdiction.

Appellees contend that the district court correctly held that Battle was deprived of no federal right because state law controls who shall or shall not be policemen and for what reasons they shall be hired or retained in the public employ. Battle argues that his rights to due process and free speech, as guaranteed by the First and Fourteenth Amendments, were denied him when he was discharged because he allowed two white women to stay at his home. The defendants' objections went deeper than the activities in which the women were engaged. The concern was with the public's response to women of the white race staying at the home of a black police officer with his family.

It is now settled law that if the state, either by statute, regulation or procedure, creates in its employees the expectation of re-employment or retention, then their employment can only be terminated under procedures which accord them the fundamentals of due process. Ferguson v. Thomas, 5 Cir. 1970, 430 F.2d 852; Pred v. Board of Public Instruction, 5 Cir. 1969, 415 F.2d 851 (*Pred I*); Freeman v. Gould Special School District, 8 Cir. 1969, 405 F.2d 1153.[2] According to the laws of Mississippi, Battle had no right to expect continued employment because he could be dismissed without cause. Other employees in Mississippi, those who come under the civil service laws, can be removed only for cause and are entitled by state law to notice and the opportunity to challenge their removal.[3] There were no state administrative or judicial procedures established through which Battle could vindicate his rights.

We are not presented with the broad issue of whether a state has a legitimate interest in having certain employees to serve at the pleasure of the appointing body. We are presented with the claim of an individual who was so employed and who alleges that he was dismissed for reasons which violate his constitutional rights. It is true that states have broad leeway in establishing

---

1. Section 3374–37, Mississippi Code 1942 reads in part:

   "From and after the expiration of the terms of office of present municipal officers, the mayor and board of aldermen of all municipalities operating under this article shall have the power and authority to appoint a street commissioner, and such other officers and employees as may be necessary, and to prescribe the duties and fix the compensation of all officers and employees. All officers and employees so appointed shall hold office at the pleas-ure of the governing authorities and may be discharged by such governing authorities at any time, either with or without cause."

2. For suggested guidelines as to what complies with due process, see Ferguson v. Thomas, *supra*, and Hornsby v. Allen, 5 Cir. 1964, 326 F.2d 605, 608.

3. Sections 3825–01, 3825–03, 3825–10, 3825–39, and 3825-40, Mississippi Code 1942.

the terms of public employment. But that leeway is not without limitation.

It is no answer to the issue here to say that there is no federal right to public employment. "To state that a person does not have a constitutional right to government employment is only to say that he must comply with reasonable, lawful, and nondiscriminatory terms laid down by the proper authorities." Slochower v. Board of Higher Education, 350 U.S. 551, 555, 76 S.Ct. 637, 639, 100 L.Ed. 692 (1956). And, as the Supreme Court said in Wieman v. Updegraff, 344 U.S. 183, 191, 73 S.Ct. 215, 219, 97 L.Ed. 216 (1952), "We need not pause to consider whether an abstract right to public employment exists. It is sufficient to say that constitutional protection does extend to the public servant whose exclusion pursuant to a statute is patently arbitrary or discriminatory." [4]

■ It is recognized that the state as an employer has an interest in regulating the conduct of its employees in ways which may be more restrictive than those which can be applied to citizens who are not employees. Pickering v. Board of Education, 1968, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811; Tinker v. Des Moines Independent Community School District, 1969, 393 U.S. 503, 506, 507, 89 S.Ct. 733, 21 L.Ed.2d 731. The problem is to balance the rights of the employees as citizens against the interest of the state in promoting efficient public service. Pred v. Board of Public Instruction, 5 Cir. 1969, 415 F.2d 851, 857 (*Pred I*).

According to the defendants, Battle's employment as a police officer came to an end after the city officials told him that they had received complaints that two single white girls were residing in his home, that they wanted respect from everyone for the Police Department and that city personnel had to "stay in the middle of the road" because of racial tensions resulting from school desegregation and other matters. This statement was made to Battle in response to actions on his part which would comprise, for the private citizen, constitutionally protected activity. As to private citizens, it is exactly this type of restrictive response, based on theoretical reactions by others to the actions of the accused, which has long been condemned. Terminiello v. City of Chicago, 1949, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131.

■ "[U]ndifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression." *Tinker, supra,* 393 U.S. 505, 508, 89 S.Ct. 737.

■ Battle is entitled to be heard in the district court on the issue of whether or not he was in fact fired. If the court finds that Battle resigned, he should have the opportunity to show that his resignation was under pressure being applied because of the exercise of his constitutional rights.[5] If, at such a hearing, Battle demonstrates that his discharge or pressured resignation eventuated from his action in allowing white women to board in the home of a Negro, then Battle has met his burden of show-

4. Dorsey v. NAACP, 5 Cir. 1969, 408 F.2d 1022, is not to the contrary. Dorsey, a policeman, was dismissed by the police chief for violation of department rules and because criminal charges had been lodged against him. Dorsey sought administrative review and was reinstated. Upon a public outcry, he was then suspended pending the outcome of his trial. Contrary to the facts in the instant case, there is no indication that Dorsey's original dismissal was based on unconstitutional reasons, or that the administrative board denied him a fair hearing when it suspended him. Also, Dorsey apparently could have sought relief from his suspension through judicial review procedures authorized under the state constitution.

5. See Smith v. Board of Regents, 5 Cir. 1970, 426 F.2d 492, where it was held that the board of regents was justified in not providing a college teacher a hearing after he resigned since there was ample evidence to support the finding that his resignation was voluntary.

ing that his employment was terminated for constitutionally impermissible reasons because as a private citizen he would have a constitutional right to engage in this action. The burden would then rest on the defendants of showing within standards applicable to police officers, similar to those suggested as to teachers in *Pickering, Tinker* and *Pred I, supra,* that Battle's conduct would materially and substantially impair his usefulness as a police officer.[6]

■ A complaint under 42 U.S.C. § 1983 is an appropriate method for Battle to pursue, since this statute was intended to provide a forum for persons denied their rights under color of state law where there is no remedy under state law or where state remedies are inadequate, and further "to provide a remedy in the federal courts supplementary to any remedy any State might have." McNeese v. Board of Education, 1963, 373 U.S. 668, 672, 679, 83 S.Ct. 1433, 1435, 10 L.Ed.2d 622.

The district court erred in entering summary judgment for the defendants. The court did have jurisdiction and there were disputes between the parties over material facts.

Reversed and remanded.

---

6. That much is indicated by the following language in Tinker v. Des Moines Independent Community School District, 1969, 393 U.S. 508, 509, 89 S.Ct. 737, 738:

> "The District Court concluded that the action of the school authorities was reasonable because it was based upon their fear of a disturbance from the wearing of the armbands. But, in our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression. Any departure from absolute regimentation may cause trouble. Any variation from the majority's opinion may inspire fear. Any word spoken, in class, in the lunchroom, or on the campus, that deviates from the views of another person may start an argument or cause a disturbance. But our Constitution says we must take this risk, Terminiello v. Chicago, 337 U.S. 1 [69 S.Ct. 894] (1949); and our history

says that it is this sort of hazardous freedom—this kind of openness—that is the basis of our national strength and of the independence and vigor of Americans who grow up and live in this relatively permissive, often disputatious, society.

> "In order for the State in the person of school officials to justify prohibition of a particular expression of opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint. Certainly where there is no finding and no showing that engaging in the forbidden conduct would 'materially and substantially interfere with the requirements of appropriate discipline in the operation of the school,' the prohibition cannot be sustained. Burnside v. Byars, *supra,* [5 Cir.] [363 F.2d 744], at 749."