CITY AND BOROUGH OF
SITKA, Appellant,

v.

James SWANNER, Appellee.

No. 6293.

Supreme Court of Alaska.

Sept. 3, 1982.

Donald L. Craddick, Sitka, for appellant.

Richard H. Friedman, Sitka, for appellee.

Before RABINOWITZ, CONNOR, MAT-
THEWS and COMPTON, JJ., and DI-
MOND, Senior Justice.*

* DIMOND, Senior Justice, sitting by assignment
made pursuant to article IV, section 11, of the

## OPINION

DIMOND, Senior Justice.

James Swanner was a captain in the Po-
lice Department (department) of the City
and Borough of Sitka (Sitka). During the
winter and spring of 1980 problems devel-
oped within the department which prompt-
ed an off-duty meeting of concerned em-
ployees. The meeting was held on April 3,
and Captain Swanner attended. The police
officers drafted two letters at the meeting
which expressed their dissatisfaction with
certain department policies.

The first letter expressed the patrol offi-
cers' concern regarding a patrol vehicle
they considered to be unsafe, but were be-
ing required to use. This letter was signed
by every patrol officer and by Captain
Swanner. Swanner wrote "approved" next
to his signature, indicating, in accordance
with department policy, that he was for-
warding a communication to a higher com-
mand and that he approved of that commu-
nication.

The second letter read as follows:

To Whom It May Concern:

We the undersigned employees of the
Sitka Police Department are dissatisfied
with the daily change in department poli-
cies and general lack of organization. In
as much as we share the desire to both
strengthen and improve the quality and
effectiveness of our police department,
we are respectfully requesting your as-
sistance in advising us as to the proce-
dures that would inable [sic] us to air our
complaints.

Respectfully submitted,

Every member of the department, except
the Chief, signed this letter. Copies were
sent to the Chief of Police, members of the
Police and Fire Commission, and members
of the City Assembly.

On April 8, 1980, at the completion of his
shift, Swanner was fired for having signed

Constitution of Alaska and Alaska R.Admin.P.
23(a).

the two letters. Swanner commenced this action against Sitka for damages he asserted were the result of his being wrongfully discharged. In his complaint Swanner alleged that he had an employment contract with the City of Sitka which was breached when he was fired for causes not listed in the personnel policies, and that he was fired for the exercise of his First Amendment rights in violation of the Federal Civil Rights Act, 42 U.S.C. § 1983 (1976).[1]

The case was tried by a jury which was given two special verdict forms, one with questions relating to the contract claim, and one with questions relating to the civil rights claim. The jury resolved each question in favor of Swanner and awarded damages totaling $88,424.42.[2] Pursuant to 42 U.S.C. § 1988 (1976) the trial judge awarded Swanner a total of $16,296.96 in attorney's fees and costs.

On appeal, Sitka contends that the trial court erred by giving improper jury instructions, by refusing to grant a directed verdict against Swanner on the civil rights cause of action, and by awarding Swanner an excessive amount of attorney's fees. We find Sitka's objections to be without merit, and for reasons set forth below affirm the judgment of the superior court. Because Sitka's various objections to the jury instructions all revolve around Swanner's civil rights claim and the correct standard of law to be applied in determining his free speech rights, we believe a review of controlling First Amendment law will resolve all but one of the issues raised on appeal.[3] The issue of attorney's fees will be discussed separately.

## I. FIRST AMENDMENT RIGHTS

The proper analysis for determining the extent of a public employee's First Amendment rights was established by the United States Supreme Court in *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811, 817 (1968). Due to the wide variety of situations in which public employee free speech issues may arise, the *Pickering* court expressly declined to establish a general standard against which the statements of all public employees could be judged. Instead, the Court derived a balancing test which allows a government employer to limit the First Amendment rights of an employee only if it can demonstrate that its legitimate interest in promoting efficiency in its operation outweighs the interests of the employee in commenting upon matters of public concern. *Id.* at 568, 88 S.Ct. at 1734, 20 L.Ed.2d at 817. When making such a determination, relevant factors for consideration include the impact of the statements on co-worker harmony, the proximity of contact between the speaker and the subject of the criticism, the sensitivity of the employer-employee relationship, and the degree of interference with the regular operation of the enterprise or the degree of interference with the performance of the speaker's duties.

Sitka argues that a police officer is in a different category than the ordinary public employee, and that any restriction on Swanner's freedom of speech by the department was justified by the overriding need for discipline, esprit de corps, and uniformity among the members of a police force. In making this argument, Sitka alludes to the unquestioning obedience required in the

1. The Act provides in relevant part:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. By stipulation of counsel, this amount was reduced to $82,907.13 to take into account the tax effect on back wages.

3. We see no value in enumerating and individually discussing all fourteen points listed by Sitka in its opening brief. Moreover, six of the fourteen issues were never raised at the trial level and thus are not properly before this court for consideration. *Dome Laboratories v. Farrell*, 599 P.2d 152, 161 (Alaska 1979); *In re C. L. T.*, 597 P.2d 518, 522 (Alaska 1979).

military, and maintains that such is necessary to ensure the adequate promotion of safety of persons and property. Sitka fails to recognize, however, that a citizen does not waive or forfeit First Amendment rights when he becomes a public employee,[4] even if he becomes a police officer.[5] Such an argument has been consistently rejected by the courts, and the *Pickering* balance of interests approach to public employee's First Amendment rights has been expressly held applicable to police officers.[6]

■ Subsequent cases have established that the burden is on the employer to demonstrate not only that the exercise of the employee's rights substantially and materially interferred with the discharge of his duties and responsibilities, but also that the prevention of the disruption outweighed the employee's interest in commenting on, and the public's right to be informed about, matters of public concern. *Porter v. Califano*, 592 F.2d 770, 779 (5th Cir. 1979); *Hostrop v. Board of Junior College District No. 515*, 471 F.2d 488, 492 (7th Cir. 1972); *Battle v. Mulholland*, 439 F.2d 321, 325 (5th Cir. 1971). Application of the *Pickering* balancing test to the instant case reveals that Sitka has failed to meet this burden.

■ The correspondence upon which Sitka relied as justification for dismissing Swanner was not an adequate ground for dismissal. Neither of the two letters were in any way intemperate so as to give Sitka grounds for dismissal of Swanner on the basis of insubordination, misconduct, or poor job performance. Nothing in the record compels the conclusion that the promotion of general efficiency within the department or the job performance of the police

force was disrupted or might suffer as a result of the letters drafted expressing the officer's concerns. On the contrary, the letters were an attempt by the members of the police force to resolve morale problems that had apparently been brewing within the department for quite some time. At most, the letters reflected a difference of opinion between the officers and the Chief of Police, a matter which was clearly of general public interest.

■ In *Clary v. Irvin*, 501 F.Supp. 706 (E.D.Tex.1980), the court considered a similar situation in which three members of a Texas police force were discharged for privately criticizing the Chief of Police before members of the city council. The court found that the officer's First Amendment rights had been violated by their discharge and recognized the interest of the plaintiffs as members of a police department in communicating their disquietudes and professional concerns about its chief official to those possessed of the power to remedy the disturbing matters. *Id.* at 709. Police officers, as providers of a public service, have the prerogative and even the duty to comment on the quality of that service, when trying to improve it. *Id.* at 710.

■ Sitka argues that even under a balancing test, the right of free speech does not protect a police officer who is in a "policymaking" position and makes statements critical of departmental action. In support of this position, Sitka relies on a series of United States Supreme Court cases which permit a governmental unit to discharge "policymaking" employees solely because of their political party affiliation

---

4. *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811, 817 (1968); *Keyishian v. Board of Regents*, 385 U.S. 589, 605, 87 S.Ct. 675, 684, 17 L.Ed.2d 629, 642 (1967).

5. *Garrity v. New Jersey*, 385 U.S. 493, 499, 87 S.Ct. 616, 619, 17 L.Ed.2d 562, 567 (1967).

6. *Hanneman v. Breier*, 528 F.2d 750, 754 (7th Cir. 1976) ("Any unique aspect of police department employment is to be considered as but one element in the balancing of interests in an individual case."); *Battle v. Mulholland*, 439

F.2d 321, 325 (5th Cir. 1971); *Muller v. Conlisk*, 429 F.2d 901, 904 (7th Cir. 1970) (rejecting contention that a different standard should apply due to the quasi-military nature of a police department—this simply influences the *Pickering* balance); *Simmons v. Stanton*, 502 F.Supp. 932, 934 (W.D.Mich.1980); *Clary v. Irvin*, 501 F.Supp. 706, 710 (E.D.Tex.1980); *Ruhlman v. Hankinson*, 461 F.Supp. 145, 147 (W.D.Pa. 1978) *aff'd mem.*, 605 F.2d 1197 (3rd Cir. 1979), *cert. denied*, 445 U.S. 911, 100 S.Ct. 1090, 63 L.Ed.2d 327 (1980).

without encroaching on the constitutional provision regarding free speech. *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). However, this exception to the general prohibition against patronage dismissals of employees has been tied to the needs of an electoral government and was created to ensure that "representative government not be undercut by tactics obstructing the implementation of policies of the new administration, policies presumably sanctioned by the electorate." *Elrod v. Burns*, 427 U.S. 347, 367, 96 S.Ct. 2673, 2686, 49 L.Ed.2d 547, 562 (1976).

■ We find such a "policymaking" exception inapplicable to Swanner's case. There has been no showing that the office of the police captain in Sitka was part of any patronage system. As the Court stated in *Branti v. Finkel*, 445 U.S. 507, 518, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574, 584 (1980):

> [T]he ultimate inquiry is not whether the label "policymaker" or "confidential" fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.

■ That is not to say, however, that Swanner's position as a police captain within the Sitka Police Department should not be taken into consideration when evaluating Sitka's interest in regulating his conduct. It is clear that Sitka's concern with efficiency extends to the maintenance of harmony in close working relationships. But the extent that an employee maintains a high level policymaking position which the government has a legitimate interest in restricting is only one of the factors properly considered in the *Pickering* balance of interests test. As the Supreme Court noted in *Pickering*:

> It is possible to conceive of some positions in public employment in which the need for confidentiality is so great that even completely correct public statements might furnish a permissible ground for dismissal. Likewise, positions in public employment in which the relationship between superior and subordinate is of such a personal and intimate nature that certain forms of criticism of the superior by the subordinate would seriously undermine the effectiveness of the working relationship between them can also be imagined. We intimate no views as to how we would resolve any specific instances of such situations, but merely note that significantly different considerations would be involved in such cases.

391 U.S. 563, 570 n.3, 88 S.Ct. 1731, 1735 n.3, 20 L.Ed.2d 811, 818 n.3 (1968).

■ An examination of the working relationship in this case does not appear to be of the type to call for Swanner's holding back from fault-finding or for total confidentiality relating to his professional dealings within the police force. Although Swanner was indeed a captain of the Sitka Police Department, the responsibilities passed on to him by his supervisor, the Chief of Police, were limited and well-defined and not of a broad scope.[7] The jury instructions proffered by the trial court properly took into account Swanner's position as a "policymaker" or high ranking employee, but recognized that such a designation was not conclusive of the scope of his First Amendment rights.

■ At the close of Swanner's case in chief, Sitka moved for a directed verdict

---

7. Swanner testified to fairly specific and well-defined duties as police captain; he was to review police reports, bring prisoners to court for arraignments and supervise patrolmen. In a letter from the Chief of Police to Swanner dated March 6, 1980, Swanner's duties were further delineated. The letter stated that Swanner was not allowed to change the officers' shift roster or approve over-time nor was he to get involved with criminal investigations unless okayed through the Chief. Swanner held certain responsibilities dealing with the Impound Lot, but was not to dispose of any vehicles without the Chief's okay. In the letter, the Chief stated that Swanner's duties were to "upgrade from the lower command" and that "[a]ll policies of the Sitka Police Department will be made by me, if you have a policy you want to make clear it through me before it is made."

dismissing Swanner's civil rights claim. Sitka's counsel argues that reasonable minds could not differ on the evidence presented as to whether or not Swanner was a "policymaker". As already mentioned, we find the designation of Swanner as a "policymaker" of minimal value in its own right, but instead only one of the factors to be considered in determining whether Swanner's First Amendment rights were infringed.

In any case, the court's denial of a directed verdict on this point was proper. The judge was required to accord Swanner all possible favorable inferences from the evidence tendered and could direct a verdict only if reasonable minds could not differ as to this issue. *Bendix Corp. v. Adams*, 610 P.2d 24, 27 (Alaska 1980); *City of Whittier v. Whittier Fuel & Marine Corp.*, 577 P.2d 216, 220 (Alaska 1978). The evidence shows that Swanner's duties were so limited and his activities as a captain so restricted, that reasonable minds could easily differ on the question of whether he was a "policymaker". We find that the directed verdict for Sitka was properly denied and the judge correctly allowed the case to go to the jury for determination.

## II.  ATTORNEY'S FEES

Sitka's final contention on appeal is that the trial court abused its discretion by awarding excessive attorney's fees to Swanner. Because Swanner prevailed on his civil rights claim, he was entitled to recover reasonable attorney's fees under the 1976 Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988 (1976).[8] The amount to be awarded is within the discretion of the trial court, but such discretion must be exercised in accordance with federal law. *Ferdinand v. City of Fairbanks*, 599 P.2d 122, 125 (Alaska 1979). *See Fairbanks Correctional Center Inmates v. Williamson*, 600 P.2d 743 (Alaska 1979).

The trial court correctly applied the criteria developed in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974)[9] and approved by this court in *Ferdinand v. City of Fairbanks*, 599 P.2d 122, 125 (Alaska 1979) in determining the attorney fee award. After carefully reviewing the itemization list submitted by Swanner's attorney, the court awarded attorney fees of $15,427.50 representing 181.5 hours at $85 an hour plus costs of $869.46 for a total of $16,296.96.

Sitka protests that the trial court erred by reimbursing Swanner's attorney for an hourly rate of $85, as this amount is $10 more than the going hourly rate for an attorney in Sitka of comparable experience. However, the customary fee charged by local attorneys is only one of the factors to be considered by the court in determining whether fees are reasonable. In light of the other factors carefully considered by the trial court, we can not say that recognizing the $85 per hour fee of Swanner's attorney was unreasonable in this case.

The court's consideration of the relevant factors revealed that this case involved a dispute that was not easily resolved and involved some complex and novel issues.[10] And although relatively inexpe-

---

8. The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 provides in relevant part:

    In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

9. The twelve factors enumerated by the *Johnson* court include: (1) the time and labor required, (2) the novelty and difficulty of the questions presented, (3) the skill required to perform the legal services properly, (4) the preclusion of other employment by the attorney due to the acceptance of the case, (5) the customary fee charged for similar work in the community, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorney, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

10. For example, the question of whether punitive damages are recoverable under a § 1983 action was argued by the parties below but

rienced, the court recognized that Swanner's counsel produced high quality work both before and after the trial. Furthermore, Swanner's attorney accepted the case on a contingent fee basis, thus subjecting himself to the risk of receiving no compensation whatsoever.

Sitka asserts that because the contingency fee agreement between Swanner and his attorney provided that his attorney was to receive one-third of the total recovery in the case, as a result of Swanner's success in this action his attorney will receive more than $85 an hour regardless of what the court awards as an attorney fee. Sitka objects that for the court to award an attorney fee which effectively increases this hourly rate even more would be unreasonable.

▆▆▆▆ Sitka erroneously focuses the inquiry on the compensation counsel will receive, however, rather than on the reasonable value of the legal services rendered.[11] The courts have recognized the social utility of a contingent fee as a means of giving those without funds an opportunity for legal counsel equal to those who can pay at the hourly rate. The congressional intent in awarding fees under section 1983 was to provide an expectation of reasonable fees for vindicating the civil rights of a client. In light of the foregoing, we can not say that the amount of attorney's fees awarded in this case constitutes an abuse of the trial court's discretion.

The judgment of the superior court is AFFIRMED.

BURKE, C. J., not participating.

resolved on the eve of trial by the United States Supreme Court. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).

11. As the court stated in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 718 (5th Cir. 1974),

[t]he statute does not prescribe the payment of fees to the lawyers. It allows the award to be made to the prevailing party. Whether or not he agreed to pay a fee and in what amount is not decisive. Conceivably, a liti-

gant might agree to pay his counsel a fixed dollar fee. This might be even more than the fee eventually allowed by the court. Or he might agree to pay his lawyer a percentage contingent fee that would be greater than the fee the court might ultimately set. Such arrangements should not determine the court's decision. The criterion for the court is not what the parties agreed but what is reasonable. [*Quoting Clark v. American Marine Corp.*, 320 F.Supp. 709, 711 (E.D.La.1970).]