In the Matter of ANTHONY MORRISETTE, Petitioner, v DON-ALD DILWORTH, as Commissioner of Police, Suffolk County Police Department, Respondent.

Second Department, October 12, 1982

**APPEARANCES OF COUNSEL**

*Richard Hartman (Reynold A. Mauro* of counsel), for petitioner.

*David J. Gilmartin, County Attorney (Michael P. Bazell* of counsel), for respondent.

**OPINION OF THE COURT**

O'CONNOR, J.

Petitioner was found guilty of violating section 5.6 of chapter 2 of the general regulations of the Suffolk County Police Department, which provides: "No member of the Force is to associate or fraternize with persons known to have been convicted of any misdemeanor or felony under the laws of this state or any similar conviction under the laws of any other state or under the Federal Law."

During his hearing petitioner admitted that on July 25, 1978 he had been advised by an internal affairs sergeant to cease fraternizing with a person known to the police as "Jukebox Tony" and that on September 12, 1979 he had been found in the felon's company and on his business premises. A 10-year veteran, petitioner said he had known the felon for about five years, having been introduced to him by his wife's good friend, the felon's wife. The felon was "like a big brother", a "very good friend * * * one of my best friends, if not my best friend".

When the sergeant first approached the petitioner, his purpose was to obtain petitioner's formal denials of various accusations against him unrelated to the matter under review; upon the sergeant's learning of petitioner's association with the felon, however, the superior officer informed petitioner that his friend was a felon and warned petitioner to stay away from him. Surprised by this news, petitioner confronted the felon later and was told by him that his conviction was 20 years old and was shown a certificate of relief from disabilities that had since been issued. Petitioner explained at the hearing that he thought that the existence of such a certificate and the felon's possession of a liquor license meant that his conviction had been annulled; he admitted, however, that he did not bother to check out this assumption with internal affairs or anyone else except a patrolman with whom he had worked for several years but whose identity he could not recall. Petitioner also admitted that in response to the sergeant's warning he had agreed to cease his fraternizing with the felon.

Petitioner further testified that when a second internal affairs officer found him with the felon 14 months later in September, 1979, the officer impliedly threatened to have charges brought against him upon petitioner's disclaimer of knowledge about a fellow officer's employment as a doorkeeper at the felon's lounge. Petitioner added that the lounge, in which the felon had but a one-third interest, sponsored a softball team that included members of the police department, although two of these officers when called in his behalf testified that they had been unaware of the felon's criminal record. Petitioner's wife testified to the

effect that the fraternization ban substantially impaired her relationship with the felon's wife.

The internal affairs lieutenant who stumbled upon petitioner, off duty and in civilian clothes, in September, 1979, testified that he had done so upon his arrival at another business run by the felon, for the purpose of asking the latter about the fellow officer's alleged employment in his lounge. This witness conceded that not every case of an officer's associating with a known felon resulted in departmental disciplinary action. The witness was not, however, questioned about the contents of his October 8, 1979 written report to his commanding officer put in evidence by petitioner. The report included information that petitioner had been under surveillance of the internal affairs unit from March 21, 1978 until July 19, 1978, but had not been seen associating with the felon or otherwise conducting himself, on or off duty, in an objectionable manner. Surveillance was renewed after his July 25, 1978 warning and continued uneventfully until September 14, 1978 with respect to allegations of fraternization with the felon and card playing. During an interview after discovery of his renewed fraternization in September, 1979, petitioner denied that he had been warned or had promised to stay away from the felon and denied knowledge of the felon's criminal record; he told the witness that the day he was accidentally caught he had been on the felon's premises to see the felon's wife and that his relationship with the felon himself was "strictly business", in that the felon supplied him with wood from time to time for his wood business.

Petitioner also put in evidence a copy of the felon's limited certificate of relief from disabilities, dated January 3, 1978, which forbade gun possession. The conviction, for second degree grand larceny, had been rendered in May, 1961, when the felon was 22 years old. Paraphrasing the Correction Law (section 701), the certificate plainly stated that it was not a pardon and did not strip government agencies of their discretion in using the conviction in licensing decisions.

The hearing officer recommended a finding of guilt and a penalty of 10 days' forfeiture of accrued vacation time, and the police commissioner agreed in making the determina-

tion under review. Petitioner's application to review the determination initially challenges the sufficiency of the evidence supporting it on the ground that there had been a conflict in the testimony whether the sergeant had formally ordered or had merely advised petitioner to stay away from the felon; however, the charge against petitioner was not insubordination but fraternization, and the record well supports the determination of guilt and the punishment imposed.

Petitioner's main assault on the determination is constitutional: the regulation is overbroad (arguably prohibiting cohabitation with a convicted spouse or socializing with convicted neighbors) and vague (arguably forbidding arm's length commercial transactions with convicted merchants), and unreasonably restrictive of his right of association. These arguments are without merit.

The challenged regulation does not purport to restrict "the citizenry in general" in the exercise of their First Amendment associational rights (see *Pickering v Board of Educ.,* 391 US 563, 568); instead, it is directed solely at employees of the county police department in the exercise of the government employer's important duty, as expressed in the commissioner's determination, "to control the activities of Police Officers and to prevent even the appearance of wrongdoing". Since petitioner raises a First Amendment claim, this court may not restrict its review to the question of whether there is any rational basis for the regulation promulgated in furtherance of these purposes (see *Elfbrandt v Russell,* 384 US 11); nevertheless, limits placed upon the associational activities of government employees are not subject to more than such "exacting" scrutiny as will ascertain if the purportedly vital governmental interests articulated by the employer are advanced in the manner that is least restrictive of the employees' rights (see *Elrod v Burns,* 427 US 347, 362-363; *United States Civ. Serv. Comm. v Letter Carriers,* 413 US 548, 564-567; *United Public Workers v Mitchell,* 330 US 75, 96-101, citing *Ex Parte Curtis,* 106 US 371; *Matter of Purdy v Kreisberg,* 47 NY2d 354, 361 [partisan political activities]). Under such a test, even apart from the important governmental interest of public confidence in their civil servants, it

cannot be denied that, as a practical matter, there must be *some* limit on the fraternization of the regulators with the regulated in order to keep separate their personal and official roles for the sake of efficiency and the avoidance of subversion of the public interest. Such a limit on associational activity is self-evidently necessary for correction officers and prisoners, for probation officers and probationers and even for teachers and pupils because of the significant likelihood that personal relations will merge into and interfere with official relations. On the other hand, no such limit is necessary if the association under scrutiny does not involve fraternization with the regulated and hence presents virtually no likelihood whatsoever of confusing personal and official relationships (see, e.g., *Curle v Ward,* 59 AD2d 286, mod 46 NY2d 1049 [correction officer membership in Ku Klux Klan]).

The case under review, however, falls between these extremes. As a class described in the regulation, felons and misdemeanants upon release are technically no more "regulated" by the police than are other citizens; hence the question is whether there exists a significant likelihood in fact that the police will have some special official role to play with respect to this class. This would indeed appear to be the situation if, for example, felons and misdemeanants are more often sought out by the police for information or investigation than are other citizens. It is common knowledge that good police routine attaches substantial weight to prior convictions in pursuing tips, making inquiries and evaluating credibility during investigations. It is not unreasonable, therefore, for the police department to forbid its employees to fraternize with felons and misdemeanants because they have, as a class distinguished from other citizens, a *de facto* special relationship with the police that is worth protecting.

The constitutional soundness of the concept of limiting fraternization between police officers and known criminals has not been successfully challenged; however, its embodiment in departmental rules has (see, e.g., *DeGrazio v Civil Serv. Comm. of City of Chicago,* 31 Ill 2d 482; *Sponick v Detroit Police Dept.,* 49 Mich App 162). Petitioner's objection to the alleged vagueness of the proscription cannot be

sustained because the terms "associate" and "fraternize" have a fixed and definite meaning as construed by the courts in relation to such rules (see *Sponick v Detroit Police Dept., supra,* citing cases). Further, the regulation under review in this court clearly limits the class of pariahs to persons convicted of felonies or misdemeanors as defined by New York law and hence escapes the fatal criticism of the Illinois Supreme Court in *DeGrazio v Civil Serv. Comm. of City of Chicago* (*supra*), which invalidated a regulation that put persons with "criminal records" out of bounds. Nevertheless, the lack of a temporal qualification upon the definition of a criminal record was noted by the Illinois court and was the basis for the Michigan appeals court's invalidation of the regulation in *Sponick v Detroit Police Dept.* (*supra*) on the ground of overbreadth. Only recent convictions have a bearing on police integrity and public confidence, according to that court. We cannot fully agree with such a position because we are not in as good a position as the police commissioner in determining, as a rule of general applicability, when convictions become too stale to justify the fraternization ban. "That, we think, is a matter within his judgment." (*Flood v Kennedy,* 12 NY2d 345, 348.) More importantly, we disagree with the position of that court in its ruling that the disciplined officer can escape sanction by claiming that literal application of the regulation would sweep so broadly as to improperly proscribe cohabitation with a convicted spouse or other close relative. Just as the Supreme Court has refused to sustain complaints of vagueness when the disciplined conduct falls within the "hard core" of the proscription, it has repudiated vicarious attacks for overbreadth unless the rule's literal operation is "substantial[ly]" overinclusive in defining the targeted status or behavior (*Broadrick v Oklahoma,* 413 US 601, 608, 615).

In sum, in the case under review petitioner's conduct fell squarely within the obvious, intended scope of the regulation. Petitioner admitted that his contact with the felon had amounted to an intimate, long-term personal relationship. Petitioner likewise admitted that he had been warned to desist from just such conduct and, rather than seeking clarification or invalidation of his superior officer's

interpretation of the regulation in relation to his specific situation, petitioner ignored the warning and resumed the association. If so obvious a case as this cannot be placed well within the apparent import of the prohibition against fraternization, then surely no case can. Furthermore, although the regulation's impact on petitioner as an individual might be harsh, it is significant to note that the relative staleness of his friend's nonviolent felony conviction did not lessen his interest to the police in the investigation of another officer's employment with the felon's lounge. Absent a showing of bad faith, petitioner cannot say that the antifraternization regulation was unconstitutional or unconstitutionally applied to him.

The determination must, therefore, be confirmed and the proceeding dismissed on the merits.

BROWN, J. (dissenting). Freedom of association, like freedom of speech, is a fundamental right implicit in the First Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment (*Broadrick v Oklahoma,* 413 US 601; *Shelton v Tucker,* 364 US 479). A significant abridgement of associational freedom can be justified only by the existence of a compelling State interest, and the burden of showing the existence of such interest is on the State (*Elrod v Burns,* 427 US 347, 362).

In determining whether or not the regulation at issue here is constitutionally valid under overbreadth analysis, I am cognizant that where conduct and not merely speech is involved the overbreadth of the regulation "must not only be real, but substantial as well, judged in relation to * * * [its] plainly legitimate sweep" (*Broadrick v Oklahoma, supra,* at p 615). However, in my view, there is a significant issue as to whether the regulation entrenches upon associational freedom without the requisite justification, which cannot be determined on this record. The regulation proscribes association with persons known to have been convicted of any misdemeanor or felony. Because no limitations are placed on the type of crime, the age of the conviction or the nature of the association, the "plainly legitimate sweep" of the regulation remains to be clarified.

I would thus remit this matter to Special Term in order that the commissioner, if he be so advised, demonstrate

how the proffered basis for the regulation is consistent and rationally related to its entire sweep and that the police department's interest cannot be advanced by a more narrowly drawn regulation (cf. *Curle v Ward,* 59 AD2d 286, mod 46 NY2d 1049).

LAZER, J. P., and BOYERS, J., concur with O'CONNOR, J.; BROWN, J., dissents in an opinion in which MANGANO, J., concurs.

Proceeding pursuant to CPLR article 78 to review a determination of the respondent Commissioner of Police, Suffolk County Police Department, dated January 7, 1980, which found petitioner guilty, after a hearing, of violating a departmental regulation prohibiting fraternization with known felons, and imposed a penalty of 10 days' forfeiture of accrued vacation time.

Determination confirmed and proceeding dismissed on the merits, with costs.