Robert G. BARON, Plaintiff,

v.

Andrew P. MELONI, Individually and as Sheriff of the County of Monroe, and The County of Monroe, Defendants.

No. CIV–82–816T.

United States District Court,
W.D. New York.

Feb. 18, 1983.

Donald A. Forsyth & Sons, Rochester, N.Y. (Scott A. Forsyth, Rochester, N.Y., of counsel), for plaintiff.

John D. Doyle, County Atty., County of Monroe, Rochester, N.Y. (Nira T. Kermisch, Rochester, N.Y., of counsel), for defendants.

MEMORANDUM DECISION and ORDER

TELESCA, District Judge.

The plaintiff, Robert G. Baron (Baron), was a deputy sheriff with the Monroe County Sheriff's Department until he was terminated on May 7, 1980 for insubordination by disobeying orders of his superiors. He then commenced this action pursuant to 42 U.S.C. 1983 claiming violation of constitutional rights guaranteed by the First and Fourteenth Amendments.

Both parties move for summary judgment and essentially concede there are no serious differences with the factual background. Fed.Rule Civ.P. 56(c).

FACTUAL BACKGROUND

The plaintiff was sworn in as a Deputy Sheriff in the Monroe County Sheriff's Department on February 22, 1971, and was for the most part assigned to the road patrol. On April 20, 1978 the plaintiff's patrol vehicle was observed in the driveway of Angelo Vaccaro's home, then under surveillance by the Organized Crime Task Force as the residence of a reputed mobster. The vehicle, a marked Sheriff's car, was observed at the house from 1:00 A.M. until 5:00 A.M. when plaintiff was on duty, and the Task Force notified the Sheriff's Office of these observations. Plaintiff in his affidavit to this Court admits having been in the Vaccaro home in March, 1978 to return a watch to "... Linda's [Vaccaro] home ... and had coffee and left one-half hour later."

On April 24, 1978, Baron was confronted with this information by the Chief of Detec-

tives who ordered him not to associate with Linda Vaccaro, thereby disregarding Baron's disclaimer of any personal acquaintanceship with Linda Vaccaro. Plaintiff was subsequently observed in Linda Vaccaro's company on three separate occasions during June and July of 1978. On July 7, 1978, Baron was again ordered by Chief Deputy Thomas Cellura to refrain from associating with Linda Vaccaro; and on July 17, 1978, the Sheriff, (then William Lombard) filed disciplinary charges against plaintiff charging him with insubordination. Plaintiff was unsuccessful in State court in having the charges dismissed prior to an administrative hearing, and a hearing on these charges never materialized. *See Baron v. Lombard,* 50 N.Y.2d 896, 430 N.Y.S.2d 591, 408 N.E.2d 920 (1981).

New charges were filed against the plaintiff on April 13, 1979, arising from plaintiff's continued association with Linda Vaccaro in violation of the Sheriff's order. Plaintiff again sought (in State court) to prevent the Sheriff from administratively proceeding on these charges, but his action was dismissed, no appeal was taken, and no hearing was held.

■ On March 22, 1980, Linda Vaccaro was involved in an automobile accident while driving Baron's privately-owned automobile and on the same date, a third set of charges were filed against Baron alleging (1) insubordination for failing to follow the June, 1978 order to stay away from Linda Vaccaro, (2) conduct discrediting the Department, and (3) "consorting with persons of ill-repute". An administrative hearing was held on April 21 and 22, 1980; and on May 6, 1980, the hearing officer ruled that the defendant had violated the Sheriff's Department regulations proscribing insubordination and found that:

There were two orders given to Deputy Baron by superior officers having appropriate authority in the departmental chain of command to render such orders. The orders were specific and capable of understanding. *There is no dispute that they were violated.* (Emphasis supplied) [1]

The hearing officer also determined that the orders given to Baron had a rational basis at the time they were given, and since they had never been rescinded or terminated, Baron had violated the orders by his "continual association with Linda Vaccaro". However, the hearing officer concluded in dictum that the original order no longer had any reasonable basis because "Mrs. Vaccaro does not appear to be the focus of any surveillance, investigation or prosecution", making it difficult "to envision any interest that the department can continue to have in restraining Deputy Baron's right to associate with her". The hearing officer was referring to the fact that Angelo Vaccaro was found guilty of felony charges in Federal Court in 1979 and is presently incarcerated as a result of that conviction, which has been affirmed.[2] Vaccaro obtained a decree of divorce on June 16, 1980, and plaintiff and Linda Vaccaro were married on July 13, 1980.

## THE ISSUE

The question presented on this motion for summary judgment is whether Baron's failure to obey orders prohibiting his association with Linda Vaccaro which resulted in his dismissal for insubordination, presents a cognizable claim under 42 U.S.C. 1983 in view of the facts as presented by the parties.

## DISCUSSION

■ Plaintiff's first argument claiming that his discharge constitutes an unconstitutional infringement of his right of free as-

---

1. The hearing officer did not make any findings with regard to the first two charges because he considered them constitutionally suspect. This Court will not pass or even comment on the correctness of these observations, because it does not sit as an appellate court of State administrative proceedings. *Swope v. Bratton,* 541 F.Supp. 99, 197 (W.D.Ark.1982); compare, *Gailband v. Christian,* 56 N.Y.2d 890, 453 N.Y. S.2d 401, 438 N.E.2d 1116.

2. *United States v. Barton,* 647 F.2d 224 (2nd Cir.1981), *cert. denied,* 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152.

sociation lacks merit. Although it is clear that freedom of association for certain purposes is encompassed within the protection of the First Amendment, *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); *Angola v. Civiletti,* 666 F.2d 1 (2nd Cir.1981), and "policemen, like teachers and lawyers, are not relegated to a watered-down version of constitutional rights", *Garrity v. New Jersey,* 385 U.S. 493, 500, 87 S.Ct. 616, 620, 17 L.Ed.2d 562 (1967); a State has a permissible interest in regulating certain First Amendment rights of police officers. *Gasparinetti v. Kerr,* 568 F.2d 311, 315 (3rd Cir.1977), *cert. denied* 436 U.S. 903, 98 S.Ct. 2232, 56 L.Ed.2d 401. Furthermore, a State has an even greater interest in regulating the conduct of police officers who are of necessity distinguished from ordinary citizens. (*Kelley v. Johnson,* 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708); and in such instances conduct is carefully distinguished from oral and written expression, for purposes of determining whether the interests of the government outweigh the interests of the police officer in relation to the regulated or proscribed conduct or speech. See, discussion in *Gasparinetti v. Kerr, supra,* 568 F.2d at 314–317; *Bowen v. Watkins,* 669 F.2d 979, 982–986 (5th Cir. 1982); *City and Borough of Sitka v. Swanner,* 649 P.2d 940, 943–946 (Alaska 1982); Comment, *Free Speech and Impermissible Motive in the Dismissal of Public Employees,* 89 Yale L.J. 376, 379–383 (1979).

█ The Second Circuit, however, has recently stated that "courts have interpreted the right to freedom of speech much more expansively than they have the right to freedom of association, the latter right has been thought to be restricted to relationships having a predominately political focus", *Angola v. Civiletti, supra,* 666 F.2d at 3; see also, *Mummau v. Rancke,* 687 F.2d 9 (3rd Cir.1982); *Slevin v. City of New York,* 551 F.Supp. 917, 927 (S.D.N.Y.1982). This Court has not found any authority extending the First Amendment freedom of association to extra-marital affairs or social relationships as present in the case before this Court. (See discussion in Karst, *The Freedom of Intimate Association,* 89 Yale

L.J. 624, 673–676 (1980); *Bumpus v. Clark,* 681 F.2d 679–685 (9th Cir.1982); *International Society for Krishna Consciousness of Houston, Inc. v. City of Houston, Inc.,* 689 F.2d 541, 556 (5th Cir.1982). Nor does it appear in the present case that any other recognized associational activities have been infringed, such as union activities, *Robinson v. State of New Jersey,* 547 F.Supp. 1297 (D.J.J.1982), or association in conjunction with other firmly recognized civil rights, as in a situation with the promotion of controversial beliefs or ideas, see, *Runyon v. McCrary,* 427 U.S. 160, 175, 96 S.Ct. 2586, 2596, 49 L.Ed.2d 415 (1976). While certain associational interests, under appropriate circumstances, are entitled to constitutional protection, that protection is not extended to the extramarital association in this case.

█ Contrary to plaintiff's claim, the implementing orders prescribing plaintiff's conduct are not overbroad on their face nor, as applied to him, are they substantially vague. Overbreadth and vagueness of regulations involve matters of degree in relation to the context in which they are applied. *Broadrick v. Oklahoma,* 413 U.S. 601, 615–16, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973). Municipalities are by necessity given broad leeway in regulating the on-duty and off-duty conduct of its police officers, as in this case. *Vorbeck v. Schnicker,* 660 F.2d 1260, 1262 (8th Cir.1981), *cert. denied,* 455 U.S. 921, 102 S.Ct. 1278, 71 L.Ed.2d 462. Furthermore, the orders in question were specific and fully appreciated by plaintiff. *Allen v. City of Greensboro,* 452 F.2d 489 (4th Cir.1971).

█ Plaintiff's third argument that the orders in question are unconstitutional in violation of his right of privacy is also without merit. An individual's right of privacy is now recognized as firmly embedded in the Fourteenth Amendment. *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). The parameters of the right of privacy however are not clearly defined, but this right has evolved to protect "two different kinds

of interests ... One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Whalen v. Roe, supra,* 429 U.S. at 598–600, 97 S.Ct. at 876.

The present case does not involve a situation involving involuntary disclosure of confidential matters in violation of plaintiff's right of privacy. *Nixon v. Administrator of General Services,* 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977); *Slevin v. City of New York, supra,* 551 F.Supp. at 929–31.

■ The right of privacy, which limits governmental intrusions and restrictions on an individual's decisions and choice applies in "matters relating to marriage, procreation, contraception, family relationships and child rearing and education". *Paul v. Davis,* 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976). Thus, contrary to plaintiff's assertion that the right of privacy guarantees a general "right to marry" the right of privacy in relation to the protection of sexual intimacy and concomitant matters only extends to persons in a marital relationship. *Johnson v. San Jacinto Junior College,* 498 F.Supp. 555, 573–76 (S.D.Tex. 1980). (See discussion in Karst, *The Freedom of Intimate Association,* 89 Yale L.J. at 667–73, *supra*).

Plaintiff's argument that the Sheriff's orders had no rational basis or relationship to the police function and were therefore violative of the "liberty" clause of the Fourteenth Amendment ignores the principle stated in *Kelley v. Johnson,* 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976). In upholding a regulation delimiting the style and length of hair of police officers, the Supreme Court stated that the test is whether there is a rational connection between the regulation and the municipality's "method of organizing its police force, and the promotion of safety of persons and property". *Kelley v. Johnson, supra,* 425 U.S. at 245, 96 S.Ct. at 1444. In this case, this Court determines that such a rational connection exists between the orders and the resulting job termination in question and the permissible goals and standards for organizing and maintaining the Monroe County Sheriff's Department.

■ By their very nature, police and sheriff's departments require discipline and obedience to the commands of departmental hierarchy. Without proper internal order, it would be impossible for our law enforcement organizations to function effectively, and to maintain the requisite "discipline, *esprit de corps,* and uniformity". *Kelley v. Johnson, supra,* 425 U.S. 238, at 246, 96 S.Ct. 1440, at 1445, 47 L.Ed.2d 708. In addition, confidentiality of information is essential, and any appearance of compromise will adversely affect credibility and effectiveness, both in terms of the public and other law enforcement agencies. An individual joining a police agency must recognize that acceptance of such an important and sensitive position requires the individual to forego certain privileges and even some rights that an ordinary citizen often exercises without restrictions or thoughts of sanctions, because a police force is a para-military organization with all the attendant requirements and circumstances. *Vorbeck v. Schnicker, supra,* 660 F.2d at 1262, 1266–67. Thus, plaintiff's activities in consorting with Linda Vaccaro, both on-duty and off-duty, in violation of two orders, must be viewed in his capacity as a Deputy Sheriff and not as an ordinary citizen. See, *City of St. Petersburg v. Pinellas County Police Benevolent Ass'n.,* 414 So.2d 293 (Fla.App. 1982); *Tomkiel v. Tredyffrin Township Board of Supervisors,* 64 Pa.Cmwlth. 418, 440 A.2d 690 (1982).

In 1978, when Baron was ordered not to associate with Linda Vaccaro, the two orders were clearly correct by any standard. Angelo Vaccaro is a proven member and leader of organized crime and a prominent participant in criminal activity in this community who was then the subject of a great deal of police interest. Because of her husband's role, it is undisputed that Linda Vaccaro was also under long-term police surveillance, not as a suspect for her personal wrongdoing, but rather to gather evidence against her husband and thereby monitor the activities of those individuals in any way associated with organized crime.

Furthermore, plaintiff's continued association with Linda Vaccaro was also a source of great tension between the District Attorney's office and the Sheriff's Department, because the District Attorney was concerned with the integrity of the investigation and the public's perception of law enforcement. Undercover investigation and surveillance of known and dangerous criminals could have easily compromised the investigation and even jeopardized the safety of the officers involved. The public's perception and other law enforcement agencies' perceptions of this relationship were clearly detrimental to the Sheriff and his entire organization. It is clear that "[e]ven a hint of police corruption endangers respect for the law". *O'Brien v. DiGrazia,* 544 F.2d 543, 546 (1st Cir.1976).

Plaintiff's conduct between 1978 and 1980 in relation to his association with Linda Vaccaro was flagrant, persistent, manifesting a clear intent to disobey nondiscretionary orders issued to him and exhibiting a continuous and habitual pattern of insubordination. See, *Smith v. Price,* 616 F.2d 1371 at 1377, 1378 n. 8; *Wiegert v. Koenig,* 75 A.D.2d 908, 427 N.Y.S.2d 320 (N.Y.App.Div. 1980), *cf. Cheney v. City of Somersworth,* 122 N.H. 130, 441 A.2d 1172 (1982). Plaintiff's conduct was open and notorious, see, *Swope v. Bratton, supra,* 541 F.Supp. at 108; and his consortiums and resulting hearings received extensive media coverage, see, *Smith v. Price, supra,* 616 at 1377 n. 6. Even when these basis for the orders were allegedly no longer valid or necessary, plaintiff still continued his intentional course of conduct instead of seeking clarification, invalidation or recission of the orders (see, *Matter of Morrisette v. Dilworth,* 89 A.D.2d 99, 104–05, 454 N.Y.S.2d 864 (N.Y.App.Div.1982). The orders to plaintiff, then, were reasonable, understandable and certainly not arbitrary.

Although plaintiff's dismissal may be harsh, it nonetheless is one that is permitted, justified, and, as a seasoned police officer, one which plaintiff could and should have foreseen. Accordingly, plaintiff's motion for partial summary judgment is denied and defendants' motion for summary judgment is granted.

ALL OF THE ABOVE IS SO ORDERED.